# IN THE COURT OF APPEALS OF IOWA

No. 19-1210
Filed November 27, 2019

**IN THE INTEREST OF R.E.,**
**Minor Child,**

**B.E., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D.

Fagan, District Associate Judge.


A mother appeals the termination of her parental rights to one minor child.

**AFFIRMED.**


Maura C. Goaley, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Roberta Megel of State Public Defender Office, Council Bluffs, guardian ad

litem for minor child.


Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

After the juvenile court terminated her parental rights to her two-year-old child, this mother appeals under Iowa Code chapter 232 (2019). She argues that the State failed to prove grounds for termination by clear and convincing evidence; termination is not in the child's best interests; and the Iowa Department of Human Services (DHS) failed to provide reasonable efforts toward reunification.[1] We disagree with her arguments and affirm the juvenile court decision.

**I. Background Facts and Proceedings.**

B.E. is the mother of R.E., born in May 2017. DHS first became involved with the family in April 2018 after receiving reports that the mother was using marijuana and selling prescription medication while caring for the child. The mother denied using drugs and twice refused drug testing. She later admitted to using methamphetamine one time and she disclosed domestic violence in her relationship with her new boyfriend. Removal of the child from the mother's custody occurred by ex parte order on April 27. The child was placed with the maternal aunt. Three days later, the mother agreed to submit to a drug test and tested negative for all substances.

At a May 7 temporary removal hearing, the juvenile court ordered the mother to participate in services and submit to random drug screens. On May 30, the child underwent a drug screen, which was positive for methamphetamine and marijuana. Based on that background, the court adjudicated R.E. a child in need

---

[1] The putative father, D.B., does not appeal the termination of his parental rights. Although his paternity has never been established in Iowa, the DHS worker reported that D.B. had submitted to genetic testing in Nebraska for child support purposes. No other possible fathers have participated in these proceedings.

of assistance (CINA) on June 27.  In July, the paternal grandmother took custody of the child in Nebraska.

At a review hearing on December 10, the juvenile court noted,

> [The child] has been out of the parental home for seven months.  [The mother] has made minimal progress toward reunification as she continues to test positive for methamphetamine, has not engaged in substance abuse treatment, and has not participated in domestic violence education.  [The mother] continues to deny she is responsible for her choices that are keeping her child out of her care.  [The mother] does not have independent, suitable housing at this time and relies heavily on her mother to take care of her.  [The case manager] observes [B.E.'s mother] to enable [the mother] and minimize the severity of [the mother's] actions.

Despite the mother's lack of progress, she started having extended visits with the child on March 13, 2019.  That same day, the mother's attorney moved to have the child placed with the mother permanently.  On March 26, without notice of a drug test earlier in the month, the court returned the child to the mother's custody under DHS supervision.  Right after the hearing, the mother became upset that the court did not close the CINA case after returning the child to her.  She got into a physical altercation with her mother while the child was present.  To further complicate the reunion, the earlier drug test was positive for methamphetamine.  Additionally, DHS received several allegations about the mother, including that she lost her housing, used methamphetamine, physically assaulted two people, and dropped the child off at her mother's home without explaining where she was going or when she would return.

On March 28, the court ordered the child removed and placed in the care of the paternal grandmother.  Around the same time, the mother tested positive for methamphetamine.  When the DHS caseworker contacted the mother about this

development, she refused to come to an in-office interview, would not disclose where she was staying, and exhibited rapid speech that was hard to track. To complicate matters, the child tested positive for amphetamine and methamphetamine on April 8.

With the downward spiral of the mother's situation, the State filed its petition to terminate the mother's parental rights on May 8. On June 18, the mother admitted she used methamphetamine three weeks earlier. At the time of the termination hearing, the mother had multiple arrest warrants for crimes in both Iowa and Nebraska in April and May 2019. The mother had resolved some warrants, but some remained active. She did not turn herself in on the remaining active warrants because she would have missed the termination hearing. On June 26, the juvenile court held the termination hearing and terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (h), and (*l*). The mother appeals.

## II. Standard of Review.

Our review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the child's best interests. *Id.*

## III. Analysis.

The mother challenges the statutory grounds for termination, the court's best-interests determination, and DHS's reunification efforts. We consider each in turn.

**A. Statutory Grounds for Termination.** The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (h), and (*l*). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Thus, we focus on the grounds related to Iowa Code section 232.116(1)(h).

Looking at Iowa Code section 232.116(1)(h), the mother only challenges the final element: that the child could not have been returned to her custody.[2] The mother argues she was sober, engaging in services, and would have been able to regain custody of the child either at the time of the termination hearing or within thirty days.

We disagree. Beginning with the mother's drug activity when DHS first intervened in April 2018 until the June 2019 termination hearing, the mother made little to no progress with her issues surrounding substance abuse, mental health, and housing and employment instability. To her credit, she completed domestic violence classes in August 2018. That said, the DHS caseworker testified that

---

[2] Iowa Code section 232.116(1)(h) authorizes termination of parental rights when:
    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

despite these classes, the mother had not made better choices in romantic partners.[3]

Despite the mother's claim that she had been sober for four weeks at the time of the June 18 termination hearing, she tested positive for both amphetamine and methamphetamine on June 12. Before that, she skipped fourteen calls to have a drug patch applied after she tested positive in March. Before the termination hearing, DHS counted eight "no show" drug screen appointments. Although the mother attempted substance-abuse treatment three times, successful completion eluded her. Finally, given the chance for a thirty-day reunification placement in her home, the child tested positive for drugs, and the mother failed to show meaningful progress.[4] Likewise, by the time the termination hearing occurred, she still had active warrants pending, inconsistent drug screens, and no established housing or employment. In the child's two years of life, most of the days were spent out of his mother's care.

We agree with the juvenile court's conclusion,

> To return the child to their parent's custody would subject him to adjudicatory harms of abuse or neglect. The same problems that precipitated the child's removal from their parent's care—untreated chemical dependency, untreated mental health problems, lack of appropriate housing and employment, minimal compliance, criminal activity, incarceration, and lack of verification or commitment, failure to protect.

---

[3] The record contains ongoing allegations of domestic abuse perpetrated by the mother's romantic partners, including threats to kill the mother and this child.

[4] During this approximately two-day test placement, several allegations arose: 1) the mother was no longer allowed to reside in her step-parent's home; 2) the mother assaulted someone, stole their property, and was taking methamphetamine; 3) the mother left the child with another person with no instructions or information about when she would return or where she was going; and 4) the child was exposed to a physical altercation between the mother and maternal grandmother after a court hearing, after which the mother refused to communicate the child's location to DHS.

We find the State established grounds for termination under Iowa Code section 232.116(1)(h) by clear and convincing evidence.

**B.   Best Interests.**   The mother argues that even if the State proved statutory grounds for termination, termination was not in the child's best interests. When determining whether termination is in the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

At the time of the June 2019 termination hearing, the child was two years old and had been out of the mother's custody for fourteen of the prior twenty-two months.   The child tested positive for methamphetamine twice since DHS involvement, including after being in the mother's care for only two days in March 2019.   As noted, the mother had not used any of this time to address her substance-abuse and mental-health issues.  "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."  *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).  The juvenile court also found there was no significant bond between the mother and child to prevent termination.  We find termination of the mother's parental rights is in the child's best interests.

**C.   Reasonable Efforts.**   Finally, the mother argues DHS has failed to provide reasonable efforts toward reunification.  The mother specifically argues DHS did not maximize contact between her and child after the March 2019 removal.  DHS must "make every reasonable effort" to reunify the parent and child "as quickly as possible consistent with the best interests of the child."  *In re C.B.,*

611 N.W.2d 489, 493 (Iowa 2000) (quoting Iowa Code § 232.102(7) (1995)); *see* Iowa Code § 232.102(9) (2019).

DHS has provided many services throughout this case, including visits with the child.[5] The mother's compliance was lacking. Blaming the active criminal warrants for the failure to complete treatment, the mother admits no successful graduation from any drug program. After the removal in March 2019, DHS allowed supervised visitation. Even with the termination proceedings pending, several times the mother showed up late for visits and no visits occurred. Face-to-face visits with the child ceased because of the mother's active warrants and because an FSRP worker supervising the visit reported the mother repeatedly raised her voice at the child and at one point raised her hand as if to strike him. The mother denied this happened. Although she could not have in-person visits, DHS allowed the mother to speak with the child on video call on his birthday in May. During the call, the child cried, stayed by his grandmother's side, and appeared to not want to talk to the mother. Eventually the mother got frustrated and hung up.

After face-to-face visits ceased, DHS requested the mother set up a Parent Child Interaction Therapy (PCIT) evaluation. Although there were issues with DHS's ability to transport the child to a PCIT evaluation, once the mother was eventually able to set up an appointment on June 12, she left because the police arrived to execute her active warrants. After the police left, the provider contacted

---

[5] These services have been offered to the mother: substance-abuse evaluations and treatment; mental-health evaluations and treatment; psychological evaluations; Family Safety, Risk, and Permanency Services (FSRP); domestic-violence services; family team meetings; visitations; Journey Beyond Abuse classes; parenting classes; relative care placement; a return to the mother's care and custody; and social work/case management.

the mother, but she refused to return to finish the visit. Simply put, the mother's behavior and choices stood in the path of the reasonable efforts provided. After considering all the evidence, the mother has failed to prove DHS did not provide reasonable efforts to reunify the family.

**IV. Disposition.**

For these reasons, we affirm the termination of the mother's parental rights to R.E.

**AFFIRMED.**