# IN THE COURT OF APPEALS OF IOWA

No. 19-1539
Filed December 18, 2019

**IN THE INTEREST OF A.H., T.S., and T.S.,**
**Minor Children,**

**L.T., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Mitchell County, Karen Kaufman

Salic, District Associate Judge.


        A mother appeals the termination of her parental rights to three minor

children.  **AFFIRMED.**


        William P. Baresel of Prichard Law Office, PC, Charles City, for appellant

mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Patrick James Rourick of Patrick J. Rourick Law Office, Saint Ansgar,

attorney and guardian ad litem for minor children.


        Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

A mother appeals the termination of her parental rights to three minor children under Iowa Code chapter 232 (2019) arguing an exception to termination applies because of her close relationship with the children. Because of the mother's many issues negatively impacting the welfare of these children, we affirm the termination of her parental rights.

### I. Background Facts and Proceedings.

L.T. is the mother of Ti.S., Tr.S., and A.H., born in 2008, 2010, and 2015, respectively.[1] Beginning in 2015, the Iowa Department of Human Services (DHS) investigated this family for allegations of physical abuse, lack of sufficient food, lack of supervision, and other parenting deficiencies. Another adequate supervision concern arose in August 2017 upon reports that Ti.S. and Tr.S. were playing on the roof of the home wearing only diapers. DHS offered voluntary services, and the mother made minimal progress. Those scant efforts led to a child in need of assistance (CINA) adjudication for all three children in May 2018.

While working with the family, several more concerns arose. DHS learned the children were left upstairs during the summer without fans or air conditioning and they could not use the locked bathroom without permission. The upstairs of the home was dirty, smelled of urine, and there was feces smeared on the walls. Food was locked up in the home, and the children could not have snacks. A.H. was left in his crib or stroller most of the time, and Tr.S. took care of A.H. if he woke up overnight. The parents spent a lot of time in their bedroom playing video

---

[1] A.S. and M.H., the fathers of the children, do not appeal the termination of their parental rights.

games and ignoring the children. The parents threatened the children that they would be taken away if they talked to school personnel or DHS. To make matters worse, deficient parenting skills lead to developmental delays in these children.

After the court adjudicated the children CINA, Ti.S. was removed from the home on May 31 when the mother reported she could no longer manage the child's behaviors. Ti.S. was placed in foster care, and the court ordered the mother to participate in services and work with DHS. Admittedly, the mother's previous involvement with DHS as a child clouded her progress. She was hostile toward service providers, quick to point fingers at others, and unwilling to engage meaningfully in services. Because of the mother's lack of follow-through with services, the younger two children transferred to foster care from the home after the dispositional hearing on September 20. Even then, the mother refused to allow DHS workers inside the home to retrieve the children. When she brought them outside, A.H. smelled strongly of urine and Tr.S. acted excited to be going into foster care.

At first, the children exhibited minor behavioral issues and struggled with food hoarding and overeating in their foster placements. The juvenile court noted this "raises a tremendous amount of concerns about how [the parents] fed, or didn't feed, these children." Other unsettling behaviors of these children became apparent. While in foster care, Tr.S. showed pictures of his penis to peers and discussed oral sex, jeopardizing his foster placement because of protective concerns for the other children in the home. After Tr.S. began sexually acting out, concerns arose that he and Ti.S. had to watch pornographic videos and sex acts between the mother and A.H.'s father. Over time, the children all began showing

improvements in their behaviors because of the structure and security of their foster placements.

To address the parenting deficiencies, DHS offered services.[2] The mother did not actively engage. Instead, the mother disparaged the foster parents, DHS workers, FSRP workers, and school personnel, sometimes in front of the children. She and A.H.'s father fabricated allegations about the DHS and FSRP workers on the case, which the juvenile court described as "absurd—bordering on delusional."[3] Because of the mother's behavior, one of the foster families began recording their interactions with her. The mother's actions caused issues with the children's foster placements, leading to the children cycling through placements, being separated from one another, and ultimately impacting the willingness of A.H.'s foster placement to adopt him in the event of termination of the parents' rights.

Likewise, DHS addressed the contribution the mother's mental health played in the progress towards reunification. Her diagnosis includes anxiety, depression, and bipolar disorder. She never consistently attended therapy and often cancelled because of reported illness. The mother's lack of follow-through

---

[2] DHS offered services with Family Safety, Risk, and Permanency (FSRP), Families Together, Behavioral Health Intervention Services, Parent Partner, Family Team Meetings, and Area Education Agency. To support the family further, DHS provided supervised visitation, medical inventions, couples counseling, mental-health treatment, Psychiatric Medical Institution for Children placement, community partner services, child abuse assessments, family foster care placements, sibling visitation, Individualized Education Programs, and psychological evaluations.

[3] These allegations included that the DHS caseworker directed a neighbor to "break into their home to destroy it," "an FSRP worker us[ed] drugs in their bathroom," that another FSRP worker was in a relationship with the older children's father and kissed him during visits, that the juvenile court judge and the DHS caseworker were best friends, and that the caseworker had photographed the mother while she worked.

also extended to the children. She repeatedly failed to sign release forms for the children, which delayed their access to mental-health treatment and medical care. One service provider noted that it appeared the mother wished to hold back the progress A.H. made while in his foster placement.

Eventually, the juvenile court directed the State to file termination petitions. After a hearing on August 22, 2019, the juvenile court terminated the mother's parental rights to all three children under Iowa Code section 232.116(1)(e) and (f). The mother appeals.

## II. Standard of Review.

Our review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the children's best interests. *Id.*

## III. Analysis.

On appeal, the mother concedes the State has proved grounds for termination under Iowa Code section 232.116(1)(e) and (f), and she does not challenge the juvenile court's best-interests determination. Instead, she argues her close relationship with the children meets the criteria for an exception to termination under section 232.116(3)(c).[4]

There is an exception to termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). That said, this

---

[4] The mother also cites Iowa Code chapter 600A in support of her argument. That chapter relates to private terminations and does not apply here.

exception is permissive, not mandatory. *In re P.L.*, 778 N.W.2d 33, 38 (Iowa 2010). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

Given the mother's lack of progress changing her parenting practices, the children's safety and ability to thrive with their mother remains an unknown. To examine what is in their best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *See P.L.*, 778 N.W.2d at 39 (quoting Iowa Code § 232.116(2)). Doing so here, it is not in their best interests to return to the mother's care.

It is clear the mother loves her children. Even so, the mother has not proved that the parent-child relationship is so close that termination would be detrimental to the children. We agree with the well-reasoned conclusion of the juvenile court about the effect of termination on the children:

> Any sadness the child may experience because of termination does not overcome the likely long-term hardship and neglect the child will suffer if in the care of [the parents]. The Court simply cannot find that the parent-child relationship is so strong that it outweighs the need for termination. Despite any fondness or love between the parents and the child, it is not in the child's best interest to wait any longer for permanency.

We conclude no exception to termination applies here.

**IV. Disposition.**

For these reasons, we affirm the juvenile court's termination of the mother's parental rights to her three minor children.

**AFFIRMED.**