# IN THE COURT OF APPEALS OF IOWA

No. 19-1778
Filed March 4, 2020

**IN THE INTEREST OF G.E.,**
**Minor Child,**

**N.E., Father,**
     Appellant,

**A.S., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, William A. Price, District Associate Judge.

The mother and father of the child separately appeal the juvenile court's order terminating their parental rights to the child. **AFFIRMED ON BOTH APPEALS**.

Joseph P. Vogel of Vogel Law, PLLC, Des Moines, for appellant father.

Brooke J. Thompson of Miller, Zimmerman & Evans, PLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Magdalena Reese of the Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

A mother and father with histories of drug abuse, domestic violence, mental-health issues, and lack of stability separately appeal an order terminating their parental rights to their eleven-month-old child. They claim that their efforts undertaken in the days leading up to the termination hearing warrant additional time to work toward reunification. Finding their efforts to be a case of "too little, too late," we affirm on both appeals.

### I.     Factual and Procedural Background

At the time of the child's birth, the mother admitted to hospital staff that she had used heroin, methamphetamine, and prescription drugs during her pregnancy. In spite of the mother's admitted use, the child did not test positive for drugs at birth. Nevertheless, the Iowa Department of Human Services (DHS) became involved with the family. With the mother's approval, the child was placed with the child's maternal grandmother. The mother entered and completed substance-abuse treatment, but she relapsed on heroin shortly thereafter. At around the same time, the DHS learned that the mother had rekindled a relationship with the child's father, who had his own history of abusing methamphetamine and heroin and also had been physically violent toward the mother in the past. As a result, the child was formally removed from the care of the parents and child-in-need-of-assistance (CINA) proceedings were initiated. The child was adjudicated as being in need of assistance, and placement was ordered to continue with the maternal grandmother.[1]

---

[1] The child remained in the care of the maternal grandmother through the time of the termination hearing. The child is reportedly doing well in that placement.

During the course of the CINA proceedings prior to termination proceedings starting, the father for all intents and purposes abandoned the child. He did not attend hearings. He did not participate in services, including recommended drug treatment. He did not visit the child. He continued to use methamphetamine daily. He was homeless.

The mother struggled in a similar fashion. She visited the child only sporadically. She dropped out of drug treatment. She continued to use drugs. She failed to follow through with the recommended mental-health evaluation and treatment. She was homeless as well.

As a result of the parents' lack of progress toward reunification, a permanency order was issued directing the State to initiate termination-of-parental-rights proceedings. The State filed a petition seeking termination of parental rights as directed, and a hearing on the petition was held within approximately one month after such filing.

At the time of the termination hearing, the child was approximately eleven and one-half months old. The mother and father requested an additional six months to work toward reunification, claiming they had become clean and sober, had begun receiving substance-abuse and mental-health services, had addressed their domestic-abuse history, and had begun to work toward securing housing. However, a review of the situation shows that the parents were largely as unstable at the time of the termination hearing as they were when the case began. Although the father claimed to have achieved sobriety, he admitted he had been using methamphetamine on a daily basis until approximately two or three weeks prior to the termination hearing, at which time he entered the Salvation Army as a resident.

The father had begun treatment at the Salvation Army, but he admitted he could not have the child at the facility and was not in a position to take the child into his care at the time of the hearing. The father had not seen the child in approximately six months. Prior to entering the Salvation Army, he had been living on the streets or in tents.

The mother, likewise, had made little progress. The mother's last admitted use of drugs was only one and one-half months prior to the termination hearing. Although the mother had reinitiated drug treatment, it was at a lower intensity level than had been recommended for her.[2] She also waited until one month before the termination hearing, and after permanency, to complete a mental-health evaluation and begin mental-health treatment in spite of the fact that she had been directed to undergo evaluation and treatment since the inception of the CINA proceeding several months earlier. She also testified that she had qualified for housing assistance and claimed that she was living with a friend. However, further inquiry established that the "friend" was someone she met the prior day at the drug treatment facility, the mother did not know the friend's last name, and she had stayed at the friend's house only the night before (the night between the two consecutive days of the termination hearing). Prior to that night, the mother had been living on the street.

The child has remained out of the care and custody of the parents continuously since the child's formal removal approximately eight months prior to

---

[2] The mother's evaluation recommended intensive outpatient treatment, but the mother chose to partake in the less intensive extended outpatient treatment program.

the termination hearing. Neither parent had a single overnight visit and neither parent progressed to having unsupervised visits. In fact, neither parent had even seen the child for several months prior to the termination hearing.

Based on the circumstances, the juvenile court declined to give the parents additional time to work toward reunification. The juvenile court terminated the parental rights of the father pursuant to Iowa Code section 232.116(1)(b), (h), and (*l*) (2019) and of the mother pursuant to Iowa Code section 232.116(1)(h), (i), and (*l*). Both parents appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the child's best interest. *Id.*

Termination of parental rights under chapter 232 follows a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. *Id.* at 706–07. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in

section 232.116(3) should serve to preclude termination of parental rights.  *Id.* at 707.[3]

### III.    Statutory Grounds for Termination

As mentioned, the juvenile court found three statutory grounds for termination with respect to each parent.  When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  We will confine our discussion to the ground set forth in Iowa Code section 232.116(1)(h).

Under section 232.116(1)(h), termination may be ordered if the court finds all of the following to have occurred:

> (1)    The child is three years of age or younger.
> (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)    The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4)    There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Here, there is no bona fide dispute that the first three elements have been established.  Instead, the parents focus on the fourth element.  Their arguments are not persuasive.  At the time of the termination hearing, the child could not be returned to either parent, as the father was living in a drug-treatment facility that did not allow children and the mother was living on the street, with the exception

---

[3] Neither party has raised an issue over whether the statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights, so we will not address that step of the analysis.

of the night before the second day of the termination hearing when she slept at the home of a generous stranger she met at her drug-rehabilitation facility. All statutory requirements for termination of parental rights of both parents pursuant to section 232.116(1)(h) have been met.

### IV.     Best Interest of the Child

Both parents argue that, even if statutory grounds for termination have been established, it is not in the child's best interest to terminate parental rights.[4] They argue the juvenile court did not give adequate consideration to the strides they made in their progress. We disagree.

The juvenile court considered the claimed strides and properly dismissed them as inadequate for avoiding termination or granting an additional six months to work toward reunification. The juvenile court aptly observed that, at the time of the termination hearing, the case had been open for eight months without the issues that led to removal being fixed. The juvenile court noted that the father admitted to significant abuse of methamphetamine and heroin throughout the entire period the case had been pending. He had been kicked out of one drug rehabilitation facility for stealing. He admitted he did not even know the child. The father claimed to have completed a substance-abuse evaluation, but he was not aware of the treatment recommended. Although he was living at the Salvation

---

[4] It is not entirely clear whether the mother's argument includes a claim that the State failed to establish that termination is in the best interest of the child. However, since the line between arguments regarding satisfaction of statutory grounds and best interest is sometimes murky and we need to address the best-interest analysis with regard to the father anyway, we will give the mother the benefit of the doubt and assume she has properly raised a best-interest-of-the-child issue.

Army and receiving drug treatment there, the father admitted to having only gone approximately three weeks without using drugs leading up to the termination hearing. He had taken minimal to no steps to address his mental-health or domestic-violence issues.

Similarly, the juvenile court noted that the mother had refused to submit to drug testing, failed to comply with services, used methamphetamine and heroin less than two months before the termination hearing in spite of having reinitiated drug treatment, followed a recommended drug-treatment course that was less intensive than that recommended for her, not established a residence suitable for herself or the child, not addressed her mental-health treatment by consistently participating in treatment, and intended to resume living with the father in spite of his history of domestic violence directed at the mother.

Upon our de novo review of the record, we agree with the juvenile court's factual findings and conclusion that termination of the parents' rights to the child is in the child's best interest. While the parents took some steps toward improvement in the last couple weeks prior to the termination hearing, it was too little, too late. The parents had eight months to demonstrate a willingness to improve and become viable placement options for the child, and they failed to do so. Since the parents waited until a matter of days leading up to the termination hearing to take any discernable steps at improvement, they wasted the opportunity to demonstrate that such steps are going to take hold. This child should not be left to wait any longer in an experiment to see if the parents' claimed progress is a long-term change or a mirage. *See In re D.W.*, 385 N.W.2d 570, 578 (Iowa 1986) (noting courts are not to gamble with a child's future by waiting for a parent to finally face

the parent's problem). This is especially true given the child's young age. *See D.W.*, 791 N.W.2d at 707 (noting a child should not be asked to continuously wait for a stable biological parents, particularly at a tender age).

**V. Conclusion**

We find the State proved the statutory grounds for terminating the parental rights of both parents and termination is in the child's best interest. Therefore, we affirm the termination of the parental rights of both parents.

**AFFIRMED ON BOTH APPEALS.**