**IN THE COURT OF APPEALS OF IOWA**

No. 20-0976
Filed November 4, 2020

**IN THE INTEREST OF I.S.,**
**Minor Child,**

**J.M., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

    A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

    Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant mother.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Kimberly Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

    Considered by Mullins, P.J., and May and Schumacher, JJ.

**MULLINS, Presiding Judge.**

A mother appeals the termination of her parental rights to her minor child.[1] She challenges the juvenile court's denial of her motion to continue the termination hearing and argues the court erred in holding the hearing by video conference despite her refusal to waive her personal presence. She also argues the child could have been returned to her care at the time of the termination hearing, termination is contrary to the child's best interests, and the statutory exception to termination contained in Iowa Code section 232.116(3)(c) (2020) should have been applied.

I.      **Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Human Services (DHS) in November 2018 upon allegations of the father using methamphetamine while caring for the child, who was born roughly a month earlier.[2] The mother agreed to stay away from the father if she thought he relapsed. In February 2019, the child was adjudicated as in need of assistance pursuant to the parties' stipulation. In May, concerns arose that the parents had been drinking heavily for several days and were caring for the child while intoxicated. The child was removed from parental care and was not returned during the remainder of the proceedings. The mother continued to struggle with alcohol abuse. She began participating in substance-abuse treatment, mental-health treatment, and family treatment court in late 2019. In October, DHS recommended a three-month

---

[1] The father's parental rights were also terminated. He does not appeal.
[2] The mother's three other children were removed from her care in 2005 and were adjudicated children in need of assistance (CINA). Custody of the children was transferred to their fathers, and the cases were closed.

extension based on the mother's progress. Then the mother relapsed in November, again in January 2020, and again in April 2020. And while the mother progressed to semi-supervised visitation in October 2019, her visits reverted to being fully supervised shortly thereafter due to her lack of participation in substance-abuse treatment and concerns for alcohol abuse.

In February 2020, DHS recommended, and the State filed, a petition for termination of parental rights. The mother worked her way back to semi-supervised visits in March, but visits were moved to an electronic format in April due to COVID-19. In light of this, the mother's electronic visits with the child were increased in frequency.

The termination matter was set for final pretrial conference on June 3, and trial on June 8. On April 6, the supreme court entered an order containing the following provision:

> Those hearings that are set between April 6, 2020 and June 15, 2020 should either be continued until after June 15, 2020 or should ONLY be conducted by video or phone conferencing. Uncontested hearings should use remote technology. Contested hearings, such as a contested adjudication hearing or termination hearing, may be conducted via remote technology if all parties agree, and thereafter file a written waiver of personal appearance or waive such appearance on the record. If one party objects to proceeding by phone, and the juvenile court believes the matter should nonetheless go forward and not be postponed, then the court can order telephonic testimony.

Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Child Welfare and Juvenile Justice Youth and Families* ¶7 (Apr. 6, 2020), *available at* https://www.iowacourts.gov/collections/48 8/files/1079/embedDocument/.

On May 22, the supreme court entered another order providing: "Non-delinquency juvenile matters set to commence before July 13, 2020 shall either be continued to a date no earlier than July 13, 2020 or conducted with the parties and/or participants appearing remotely using videoconference or telephone at the discretion of the court." Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* ¶41 (May 22, 2020), *available at* https://www.iowacourts.gov/collections/499/files/1093/embedDocument/.

On May 28, the mother filed a motion to continue trial, in which she demanded personal appearance at trial and noted her refusal to waive the same. The court considered the motion at the June 3 pretrial conference, at which the State and guardian ad litem resisted a continuance, arguing the child's need for permanency outweighed any disadvantages of conducting the trial by video conference. The court ruled on the motion to continue as follows:

> [T]he child is approximately 19 months old and has been removed from parental care for over a year. The court finds that her need for permanency dictates that this matter not be delayed for another several months in order to schedule a face-to-face trial. The Court has arranged for the matter to proceed via video means. This will allow the witnesses to be viewed by the parties as they testify. The mother has, for many weeks, participated in Family Treatment Court via a video platform and has shown herself adept at doing so. If the mother and counsel wish, nothing prohibits them from being in the same location during the trial. If they choose not to do so, the court will make time after each witness' testimony for the parties to confer with their clients in private before continuing with the next witness. The court finds that the best interest of the child weighs in favor of continuing with the trial as scheduled with those provision[s] made to allow for the mother's participation remotely. The mother's motion to continue is denied.

Trial was conducted on June 8 and 22, after which the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h). The mother appeals.

## II.    Standard of Review

Appellate review of orders terminating parental rights and constitutional claims is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019); *In re C.M.*, 652 N.W.2d 204, 209 (Iowa Ct. App. 2002). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). However, we review the denial of a motion to continue for an abuse of discretion, which occurs "when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at *3 (Iowa Ct. App. 2020) (quoting *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018)).

## III.    Analysis

### A.    Motion to Continue

We begin with the denial of the mother's motion to continue. The mother appears to argue the denial of her motion to continue violated her constitutional rights to due process and to confront witnesses.[3] But, as to the due process

---

[3] The mother specifically points out that she "was unable to effectively communicate with her counsel, unable to present physical rebuttal evidence she was asked about, and unable to fully engage in the process or even hear parts of the proceeding." The record belies her claims. The mother was provided frequent breaks to consult with counsel, of which she took advantage. And the mother fails to point to what physical evidence she would have liked submitted, nor did she ask

challenge, the mother participated in the entire hearing, the court provided additional safeguards in the form of frequent breaks for consultation, and we recently struck a balance between the interest of permanency for children and one's interest in participating in a termination hearing in person, and we found conducting a termination hearing by electronic means when the circumstances do not permit in-person attendance did not violate due process. *Id.* at *5–9. We find the mother's due process rights were likewise not violated here. As to the claimed violation of the mother's right to confront witnesses, we repeat there is no constitutional "right to confront witnesses outside the context of a criminal proceeding." *Id.* at *5 n.9. Lastly, we disagree with any implication by the mother that the juvenile court may only order a telephonic hearing to proceed over objection when emergency circumstances are present. The relevant provision from our supreme court's order simply leaves it to the juvenile court to decide whether the matter should proceed. In any event, where, as here, the limitations period has lapsed, we view termination proceedings with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

B.      Sufficiency of the Evidence

The mother appears to challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court, as she passively argues "there is no clear and convincing evidence that the child could not be returned to [her] care." *See* Iowa Code § 232.116(1)(h)(4). But the mother

---

that the record be left open for the purpose of submitting the alleged evidence. And, while there were some technical difficulties during trial, the court took remedial action after each such instance, such as directing that questions or answers be read back when there were sound or connection issues.

demonstrated an inability to maintain long-term sobriety, which resulted in lack of progression in visitation. While the mother progressed to semi-supervised visitation in October 2019, her visits reverted to being fully supervised due to her lack of participation in substance-abuse treatment and concerns for alcohol abuse. The mother worked her way back to semi-supervised visits in March 2020, but visits were moved to an electronic format in April due to COVID-19. By the time of the June termination hearing, neither the family safety, risk, and permanency (FSRP) or DHS workers were able to recommend semi-supervised visits, let alone return to parental custody, due to the mother's recent erratic behavior. The FSRP worker testified to her continuing concerns for the mother's mental health and inability to maintain long-term sobriety. The worker also testified the mother was not in a position to have semi-supervised visitation and she would not be in a position to have semi-supervised visits "any time soon." The DHS worker was unable to recommend the child be returned to the mother's care due to her pattern of relapses, deterioration of her mental health, and resulting erratic behavior. Even the mother's close friend agreed the child could not be returned to the mother's care at the time of the termination hearing, noting the mother needed to continue participating in services and progress in her level of visitation. We find the evidence clear and convincing that the child could not be returned to the mother's care at the time of the termination hearing.

C.    Best Interests

Next, the mother contends termination is contrary to the child's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for

furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

As noted, the defining elements of a child's best interests are safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. While the mother's close friend testified to her belief the mother is on a "corrective path" and has the ability to provide care for the child, a de novo review of the record discloses the mother's pattern of short stints of sobriety followed by relapse. The mother largely bases her best-interests claim on the fact that she has engaged in services. But what is most troubling is the mother's repeated relapses occurred while she was engaged in substance-abuse treatment, mental-health therapy, Alcoholics Anonymous, family treatment court, and other programming. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). Alcoholism is a crippling affliction. While we hope the mother prevails in her battle with the disease, "we cannot deprive a child of permanency after the State has proved a ground for termination" upon such sentiments. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). The mother has had ample time and resources to remedy the need for removal but has failed to do so. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *Id.* at 778 (citation omitted).

This is unquestionably one of those unfortunate cases in which a parent progresses and regresses, the progress is not enough to have the child returned to their care, and matters simply reach a point at which the child's best interests command permanency and stability.

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We find termination to be in the child's best interests.

D.      Statutory Exception

To the extent the mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), while we acknowledge a bond between the mother and child, we conclude she failed to meet her burden to show "that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship," especially given the child's young age and removal from the mother for most of her short life. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting the parent bears burden to establish an exception to termination). While the FSRP worker acknowledged a bond between the mother and child, she opined termination would not affect the child's emotional health and stability. The DHS worker likewise acknowledged a bond between the mother and child but opined the child "is young enough to be able to move forward without any great impact" resulting from termination, and the child is bonded to her pre-adoptive foster family.

**IV.** **Conclusion**

We affirm the termination of the mother's parental rights.

**AFFIRMED.**