**IN THE COURT OF APPEALS OF IOWA**

No. 21-0928
Filed September 22, 2021

**IN THE INTEREST OF S.P.,**
**Minor Child,**

**J.M., Mother,**
    Appellant,

**M.P., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**

Patricia J. Lipski, Washington, for appellant mother.

Bret R. Larson of Orsborn, Mitchell, Goedken & Larson, PC, Ottumwa, for

appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Sam K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the termination of their parental rights. We find the State has established grounds for termination, termination is in the child's best interests, reasonable efforts were made to reunite the parents with the child, and an additional extension of time is not warranted. We affirm both appeals.

**I. Background Facts & Proceedings.**

J.M. is the mother and M.P. is the father of S.P., born in late 2018. The family was already familiar to the department of human services (DHS) at the time the child was born due to concerns regarding the mother's failure to supervise her older children and allegations the father had sexually abused one of the mother's older children.

S.P. was born with breathing and feeding difficulties and other health problems which require ongoing specialized care. In the days after birth, hospital staff reported neither parent was participating in the child's care or responding appropriately despite prompts from staff. Both parents signed a voluntary placement agreement while the child was still in the hospital. The child moved from the hospital to ChildServe, and then into family foster care. The parents stipulated to the adjudication of S.P. as a child in need of assistance (CINA) in February 2019, and the court placed the child in the legal custody of DHS.

The child has a variety of medical, physical therapy, and occupational therapy appointments in multiple towns each month. The child uses a feeding tube, and as the child has grown, the child's nutritional needs change often requiring recalculating the proportions and adjusting the volume and speed

settings of the food pump. The child's health requires stability, a steady routine, and attentive caretakers.

In the fall of 2020, the foster mother offered additional training to the mother on the child's nightly routine. The mother only attended a few times, citing her lack of transportation and illness as reasons for not attending. The father was not allowed to participate in this training because other children were present in the foster home. During visits, when the mother tried setting up the feeding tube, she sometimes forgot needed details to keep the feeding on track. The father also struggled with following directions on the child's feeding tube and correctly mixing formula. Neither parent regularly asked the child's doctors questions about the child's diagnoses, treatments, or how to help.

The mother has moved between the father's home and the home of her boyfriend since July 2020. The mother's boyfriend has a history of domestic abuse, self-harm, aggression, and alcohol abuse; he has not been approved to attend visits. The mother has semi-supervised four-hour visits with the child once a week. The mother completed a home study in November 2020, which determined the she could not safely meet the child's needs. She has been employed throughout the proceedings. The mother does not have her own transportation, instead getting rides from her boyfriend, the father, or rideshare.

For the first year and a half of the CINA proceedings, the father was not consistent with visitation. For the past year, he has consistently attended a weekly four-hour supervised visit and video chats with the child. He has worked several different jobs, but maintains employment. The father has his own home and also spends significant amounts of time at his girlfriend's home. In the months leading

up to the termination hearing, the father sometimes fell asleep during the child's medical appointments and visits. The father participated in an April 2021 psychosexual evaluation, which recommended his visits with the child be supervised and he should enter therapy to address his mental-health needs, emotional swings, and the recent accusations of sexual abuse. He has consistently attended mental-health therapy since the recommendation, but has refused to participate in further sex-offender education or counseling.

The court terminated each parent's rights pursuant to Iowa Code section 232.116(1)(h) (2021).[1] Each parent appeals.

**II. Standard of Review.**

We review termination-of-parental-rights cases de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The paramount concern in termination proceedings is the best interests of the child. *M.D.*, 921 N.W.2d at 232.

---

[1] Iowa Code section 232.116(1)(h) provides the court may order termination of parental rights if it finds all of the following:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

**III. Analysis.**

*The mother.* The mother contends the State has not established a ground for termination, the State did not make reasonable efforts at reunification, and termination is not in the best interests of the child.

First, the mother claims the State did not prove by clear and convincing evidence the child could not be returned to her care. *See* Iowa Code § 232.116(1)(h)(4). We cannot agree. The mother does not have a stable home, lives with a man not approved to attend visits, much less live in the same home with the child, and her boyfriend's alcohol abuse is a persistent problem. The mother does not have reliable transportation to get the child to all necessary medical and therapy appointments, and has not demonstrated the necessary attention to detail to adequately care for the child's medical needs. The State has established by clear and convincing evidence the child could not be returned to the mother's care at the time of the termination hearing.

The mother also contests the State's efforts to provide services, stating she requested additional and longer visitation and the chance to demonstrate her ability to care for the child. The visit extension she requested—from service workers and not the court—was in the two months immediately before the COVID-19 pandemic; the pandemic required a pause of in-person visits. The mother never filed a motion requesting additional services or visitation. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("Although DHS must make reasonable efforts in furtherance of reunification, . . . parents have a responsibility to object when they claim the nature or extent of services is inadequate.").

When visits resumed in June 2020, the mother was back to shorter, supervised visits while she reestablished her bond with the child. DHS asked the court for an extension after visits resumed so the parents could learn about the child's current needs and attempt to assume responsibility for the child's care. DHS's actions were reasonable under the circumstances.

The mother next complains she was not allowed to independently display her skills at the child's feeding. But the additional supervision by service providers was reasonably necessary to ensure the child's health and safety while also giving the mother an opportunity to display her ability to meet the child's needs. We find the State made reasonable efforts.

Next, the mother asserts termination is not in the best interests of the child due to the closeness of the parent-child bond. In evaluating the best interests of the child, we consider "the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). While the closeness of the parent-child bond may be considered as a permissive exception to termination, the parent resisting termination has the burden of establishing the exception. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother and child do have a bond, but the mother has failed to carry her burden to establish "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.3(c). And we must consider the child's long-term physical needs and the lack of stability in the mother's life. These factors suggest termination is in the child's best interests.

The mother alternatively suggests a more suitable permanency option is a guardianship in the care of the child's current foster care providers. The mother presents no evidence the current foster parents—the proposed guardians—are willing to enter into such an arrangement. Moreover, "a guardianship is not a legally preferable alternative to termination." *Id.* at 477 (citation omitted). Guardianship is not an appropriate alternative in this case. This child has been in family foster care for well over two years and needs permanency. Termination of the mother's parental rights is in the child's best interests.

We affirm the termination of the mother's parental rights.

*The father.* The father claims the State did not prove a ground for termination of his parental rights existed, termination was not in the child's best interests, the State did not provide reasonable efforts, and the court should have granted him additional time for reunification.

The father's rights were terminated under Iowa Code section 232.116(1)(h). Like the mother, he does not contest the first three elements, but instead argues the child could have safely been returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). It is noteworthy that only a few months before the termination hearing, one of the recommendations in the father's psychosexual evaluation was that he only have supervised visits with the child. He did not consistently attend medical appointments when he had notice of them and fell asleep at appointments and visits. The father did not consistently notice the child's signals when struggling with feedings. We find the child could not safely be returned to the father's care.

The father's petition briefly states he does not agree with the court's conclusion that termination of his parental rights is in the child's best interests. He provides no explanation or reasoning *why* he disagrees with the finding. *See* Iowa R. App. P. 6.1401 Form 5(8) ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why."). Considering the child's long-term physical needs and the father's difficulty in displaying the necessary attentiveness, we find termination is in the child's best interests.

The father makes a reasonable-efforts claim, citing a lack of time to file for reasonable efforts between the case plan and the termination hearing and asserting he was not provided the same efforts as the mother. The father filed a motion for reasonable efforts in January 2020, seeking additional visitation and earlier notice of medical appointments. However, he failed to appear at the hearing on the motion, and it was dismissed. He filed a new motion in February 2021 relating to the psychosexual evaluation DHS was requiring before an increase of visitation. The State requested an order for payment of the assessment, which was approved. His visitation did not increase after the evaluation because of the recommendations of the evaluation, not a lack of reasonable efforts by DHS.

The father's claim that DHS offered the mother more services than him is based on the additional feeding-tube training provided to the mother. The training was provided by the foster family, not the State. And we will not fault the family for protecting the other children in their home when faced with a person with a recent

founded sex-abuse allegation against a child.[2] We find the State provided reasonable efforts.

Finally, the father asserts the court should have granted him additional time to reunite with the child. The child had been out of the parents' care for thirty months at the time of the termination hearing—the child's entire life. The juvenile court granted additional time in January 2020 and again in July. A child should not be asked to continuously wait for a stable biological parent, particularly when the child is of tender age. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). This child deserves permanency, not further delay as the father addresses long-known issues. A further extension is not appropriate.

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**

---

[2] The father's significant other has children, but he is "never left alone with them," and he does not stay at her home when the children are there.