CADY, Chief Justice.
 

 In this appeal, we must decide the extent to which an incarcerated parent is entitled to participate from prison by telephone in a hearing to terminate parental rights. The juvenile court permitted the parent to participate in the hearing by telephone but only to give testimony and entered an order terminating parental rights following the hearing. On appeal, the court of appeals affirmed the decision
 of the juvenile court. On further review, we vacate the decision of the court of appeals, reverse the decision of the juvenile court, and remand the case for an expedited hearing consistent with the procedure set forth in this opinion. We conclude an incarcerated parent is entitled to participate from a prison or jail facility in the entire hearing for termination of parental rights.
 

 I. Background Facts and Proceedings.
 

 The juvenile court in Ida County terminated the parental rights of a mother to her five children on May 22, 2018, following a hearing. The children had been removed from the mother's care prior to the hearing primarily due to her chronic drug and alcohol abuse. She had used methamphetamines off and on for years and was convicted and sentenced to prison in 2010 for manufacturing methamphetamine. The mother consumed and manufactured methamphetamine in the presence of the children, and her drug addiction adversely impacted her ability to parent and attend to the needs and development of her children.
 
 [1]
 
 The children were in the care of their respective fathers at the time of the termination hearing.
 

 The mother was incarcerated in a jail facility in Winner, South Dakota, at the time of the termination hearing. She had been arrested in South Dakota on multiple felony charges involving possession of controlled substances with intent to deliver, possession of methamphetamines, and other crimes alleged to have occurred in three different counties in South Dakota. Prior to the termination hearing, the mother moved for a continuance due to her imprisonment or, alternatively, requested to participate in the hearing by telephone.
 

 The juvenile court denied the motion for a continuance. It concluded the resulting delay would not be in the best interests of the children. Instead, it granted the mother's alternative request to appear at the hearing by telephone, but only to present her testimony and to be cross-examined. The juvenile court, however, directed that she present her testimony at the close of the State's case-in-chief to allow her counsel to inform her prior to testifying of the nature of the evidence presented by the State in support of the termination.
 

 Counsel throughout the hearing represented the mother. After the State concluded the presentation of its evidence, the mother conferred with her counsel and then presented her testimony. At the conclusion of the telephone call, the attorneys presented their closing arguments. The juvenile court subsequently entered a written order terminating the mother's parental rights.
 

 On appeal, the mother claimed the process provided by the juvenile court for her to participate in the termination hearing deprived her of her rights to confront witnesses, assist in cross-examination of witnesses, and hear the evidence offered by the State. She identified numerous findings of fact made by the juvenile court in the juvenile order that were based on evidence submitted by the State that she claimed was incorrect and was unable to refute due to the limitations on her ability to participate in the hearing.
 

 The State acknowledged the better practice may have been to allow the mother to
 participate by telephone in the entire hearing, but argued the procedure followed by the court satisfied the minimum requirements of due process. The court of appeals found the procedure was "good enough" under its precedence, although it too acknowledged the "better practice" would have been to do more to give the mother a greater opportunity to participate in the hearing.
 
 [2]
 

 The mother requested, and we granted, further review. She asks that we establish the procedure for juvenile courts in this state to follow in conducting hearings to terminate parental rights of parents who are incarcerated. She requests a new hearing under a procedure that gives her an opportunity to participate in the entire hearing.
 

 II. Scope of Review.
 

 Our review of termination of parental rights proceedings is de novo.
 
 In re A.S.
 
 ,
 
 906 N.W.2d 467
 
 , 472 (Iowa 2018). Although we are not bound by the juvenile court's findings of fact, "we do give them weight, especially in assessing the credibility of witnesses."
 
 In re D.W.
 
 ,
 
 791 N.W.2d 703
 
 , 706 (Iowa 2010). Constitutional claims, such as the deprivation of due process, are also reviewed de novo.
 
 P.M. v. T.B.
 
 ,
 
 907 N.W.2d 522
 
 , 530 (Iowa 2018).
 

 Moreover, our review of a district court's denial of a motion for continuance is for an abuse of discretion.
 
 State v. Clark
 
 ,
 
 814 N.W.2d 551
 
 , 560 (Iowa 2012). A court abuses its discretion when "the decision is grounded on reasons that are clearly untenable or unreasonable," such as "when it is based on an erroneous application of the law."
 
 In re A.M.
 
 ,
 
 856 N.W.2d 365
 
 , 370 (Iowa 2014) (quoting
 
 Office of Citizens' Aide/Ombudsman v. Edwards
 
 ,
 
 825 N.W.2d 8
 
 , 14 (Iowa 2012) ).
 

 Most importantly, "our fundamental concern" in review of termination of parental rights proceedings "is the child's best interests."
 
 In re J.C.
 
 ,
 
 857 N.W.2d 495
 
 , 500 (Iowa 2014).
 

 III. Analysis.
 

 The cornerstone of the analysis of the issue presented in this case is due process of law.
 
 See
 
 U.S. Const. amend. XIV, § 1 ; Iowa Const. art. I, § 9. The protections provided people under the constitutional guarantee of due process are fundamental to society. These protections include procedural safeguards for people who face state action that threatens a protected liberty or property interest.
 
 Bowers v. Polk Cty. Bd. of Supervisors
 
 ,
 
 638 N.W.2d 682
 
 , 690 (Iowa 2002). Once the law finds a protected interest to exist, the question turns to what process or procedure the law must provide the person.
 
 In re C.M.
 
 ,
 
 652 N.W.2d 204
 
 , 212 (Iowa 2002). Generally, three competing interests have shaped the contours of this protection.
 

 First, the private interest ... affected by the [proceeding]; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [third,] the Government's interest, including the function involved and the
 fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 

 Mathews v. Eldridge
 
 ,
 
 424 U.S. 319
 
 , 335,
 
 96 S.Ct. 893
 
 , 903,
 
 47 L.Ed.2d 18
 
 (1976) ;
 
 see
 

 In re C.M.
 
 ,
 
 652 N.W.2d at 212
 
 . These factors identify the interests and concerns involved and draw upon evidence and analysis to give a specific meaning to due process.
 

 We have said that parental termination hearings involve state action that threatens to deprive parents of their liberty interests in the care, custody, and control of their children.
 
 In re C.M.
 
 ,
 
 652 N.W.2d at 211
 
 . Thus, the broad issue we address in this appeal turns on how much process is due to incarcerated parents who face a hearing to terminate their parental rights.
 

 Procedural due process plays a significant role in the overall operation of our justice system. The way a justice system treats people who enter it must be as just and fair as the court decisions made by its judges. This understanding shines greater light on the critical importance of procedural fairness of a court system and the need for courts to ensure fairness in the process of justice itself.
 

 The mother in this case asked for due process in the form of a continuance of the termination hearing or, alternatively, an opportunity to participate in the hearing by telephone. This claim illustrates the challenge in achieving procedural due process. The outcome involves a careful balancing of the personal interest of litigants, the ability of the court system to accommodate and provide safeguards for litigants, and the broad interests of the government to both provide safeguards and protect the interests of all. The requested procedure also applies to a final hearing on the merits of the action. Unlike a hearing on an application for postconviction relief, the parent has not yet had his or her day in court. The hearing involves a final adjudication of the rights at stake.
 

 A. Continuance of the Hearing.
 
 A continuance of a termination hearing until an incarcerated parent is able to attend may be helpful to the parent, but the delay that accompanies such continuances may be detrimental to the best interests of children.
 
 See
 

 In re L.L.
 
 ,
 
 459 N.W.2d 489
 
 , 495 (Iowa 1990) (indicating children must not be forced to wait for responsible parenting). The focus of child welfare in this country, and Iowa, is now on permanency, and continuances of court hearings to accommodate parents might offend this goal.
 
 See
 

 In re C.B.
 
 ,
 
 611 N.W.2d 489
 
 , 493 (Iowa 2000) (explaining the Adoption and Safe Family Act of 1997 refocused the goals of child welfare cases by its increased emphasis on children's health and safety and mandate that children be placed in a permanent home as early as possible). The juvenile court in this case understood this potential harm and sought to strike the balance demanded by the Due Process Clause by allowing for a telephone appearance at the hearing.
 

 The State suggests a continuance is not even a procedural option for a juvenile court in termination hearings when the parent is not incarcerated in the same county as the court. It claims a court may only order a person confined in a penitentiary or jail to appear in a civil case to give testimony in a court in the county where the person is imprisoned.
 
 See
 

 Iowa Code § 622.82
 
 (2017). The State also points out this statutory limitation is the foundation of the rule that has been followed in Iowa, previously articulated by the court of appeals, and applied by the juvenile judge in this case that incarcerated persons only need to receive advance notice of a hearing, be represented by counsel at a hearing, and be given an opportunity to present testimony orally by telephone.
 
 See
 

 Webb v. State
 
 ,
 
 555 N.W.2d 824
 
 , 826 (Iowa 1996) (applying the rule to postconviction-relief proceedings and citing
 
 In re J.S.
 
 ,
 
 470 N.W.2d 48
 
 , 52 (Iowa Ct. App. 1991), holding the same is true involving the termination of parental rights).
 

 We find it unnecessary to address the State's statutory argument. Section 622.82 generally applies to persons incarcerated in this state. The mother in this case was not confined in Iowa. Furthermore, Iowa Code section 232.112 specifically requires parents be given "an opportunity to be heard" in a termination hearing. Nevertheless, the motion for continuance made by the mother in this case did not ask the juvenile court to order her appearance in court at a future hearing while incarcerated. Additionally, the mother did not ask us to recognize a due process right for incarcerated parents to be physically present at a termination hearing.
 
 See
 

 In re Termination of Parental Rights of Heller
 
 ,
 
 669 A.2d 25
 
 , 32 (Del. 1995) (recognizing no due process right for an incarcerated parent to be present at a hearing to terminate parental rights);
 
 In re J.P.B.,
 

 509 S.W.3d 84
 
 , 97 (Mo. 2017) (recognizing no constitutional right of incarcerated parents to attend a termination hearing);
 
 St. Claire v. St. Claire
 
 ,
 
 675 N.W.2d 175
 
 , 177-78 (N.D. 2004) (concluding an incarcerated parent has only a limited right to appear in person at a hearing to terminate parental rights). Accordingly, we review the juvenile court's denial of the motion for continuance in this case under an abuse-of-discretion standard and find ample reasons that show the juvenile court properly exercised its discretion to deny the continuance.
 
 See
 

 In re Involuntary Termination of Parent-Child Relationship of K.W.
 
 ,
 
 12 N.E.3d 241
 
 , 244-47 (Ind. 2014) (identifying and applying eleven factors, typically used in consideration of a motion to transport an incarcerated parent, to review the exercise of discretion in denying a motion to continue a termination hearing). The mother made no claim that she would be unable to participate meaningfully in the termination hearing by telephone, with the physical presence of counsel at the hearing. On the other hand, the delay associated with a continuance of a hearing until the physical appearance of an incarcerated parent can be achieved could very well be contrary to the best interests of children and our nation's policy. Considering all relevant factors, the balance of the competing interests support the mother's alternative request to participate by telephone, not a continuance. The fighting issue turns on whether the limitations imposed by the juvenile court on the mother's participation in the hearing by telephone comply with due process.
 

 B. Participation in Hearing by Telephone.
 
 Generally, an incarcerated parent who is unable physically to attend a termination hearing must be given the opportunity to participate in the hearing by alternative means.
 
 In re Baby K.
 
 ,
 
 143 N.H. 201
 
 ,
 
 722 A.2d 470
 
 , 472 (1998) (concluding due process does not require an incarcerated parent's physical presence at the termination hearing "provided the parent is otherwise afforded procedural due process at the hearing");
 
 In re Adoption of J.N.F.
 
 ,
 
 887 A.2d 775
 
 , 781 (Pa. Super. Ct. 2005) (holding a trial court must give an incarcerated parent the ability to meaningfully participate in a termination proceeding if the parent desires to contest the termination petition). Some courts have concluded that due process is satisfied when an incarcerated parent is afforded the opportunity to participate in the entire termination hearing by telephone from the prison.
 
 Orville v. Div. of Family Servs.
 
 ,
 
 759 A.2d 595
 
 , 599 (Del. 2000) (holding the family court should have afforded the incarcerated mother an opportunity to participate by phone for the entire hearing and citing
 its prior decision in
 
 Heller
 
 ,
 
 669 A.2d at 32
 
 , as concluding the same proposition);
 
 In re Baby K.
 
 ,
 
 722 A.2d at 473
 
 (finding the incarcerated father's inability to hear the proceedings via telephone "increased the risk of an erroneous determination"). These courts stress that meaningful participation in a parental termination case requires actual knowledge of the testimony and documentary evidence offered in support of the petition for termination.
 
 See
 

 Orville
 
 ,
 
 759 A.2d at 599
 
 . Parents often have exclusive and particular knowledge of the evidence offered by the state to support the termination petition and need to hear it to understand the evidence needed to make an effective response.
 

 Id.
 

 at 600
 
 . It is a concept fundamental to a system of justice. These observations make the parent's interests in appearing by telephone for the entire hearing compelling.
 
 See
 

 Santosky v. Kramer
 
 ,
 
 455 U.S. 745
 
 , 753-54,
 
 102 S.Ct. 1388
 
 , 1394-95,
 
 71 L.Ed.2d 599
 
 (1982) (recognizing procedural protections for parents facing termination of rights to their children are more critical than for parents resisting state intervention into ongoing family matters). Moreover, the full-participation standard has given rise to a further requirement for juvenile courts to implement substitute procedures and accommodations when circumstances surface to impugn the ability of a parent to hear and participate in the entire hearing.
 
 See
 

 Orville
 
 ,
 
 759 A.2d at 600
 
 . The substitute procedures center on a brief continuance of the hearing to provide the parent a transcript or digital reproduction of those portions of the hearing that the parent did not hear over the telephone prior to testifying by telephone.
 
 See
 
 id.
 

 (offering a variety of safeguards that can be utilized to protect an incarcerated parent's due process rights). They seek to give a parent the substantial equivalence of full participation.
 
 See
 

 In re Termination of Parental Rights to Idella W.
 
 ,
 
 288 Wis.2d 504
 
 ,
 
 708 N.W.2d 698
 
 , 702-03 (Ct. App. 2005) (recognizing alternative proceedings must be "functionally equivalent to personal presence" (emphasis omitted) ).
 

 Other jurisdictions, on the other hand, are more deferential to the limitations inherent in the authority of courts to order prisoners in other states to be available to participate in an entire hearing. They permit limited participation by telephone without additional safeguards if justified by other circumstances based on a balancing of the
 
 Mathews
 
 factors.
 
 See
 

 In re D.C.S.H.C.
 
 ,
 
 733 N.W.2d 902
 
 , 910 (N.D. 2007) (recognizing the importance of parent's participation in entire proceeding, but declining to remand in part due to the court's inability to compel the out-of-state correctional facility to allow incarcerated parent to participate in entire hearing);
 
 see also
 

 In re Involuntary Termination of Parent-Child Relationship of C.G.
 
 ,
 
 954 N.E.2d 910
 
 , 921-23 (Ind. 2011) (reviewing the approaches followed by courts in other jurisdictions).
 

 We acknowledge the process due in each case is flexible depending on the particular circumstances.
 
 In re A.M.H.
 
 ,
 
 516 N.W.2d 867
 
 , 870 (Iowa 1994). We also acknowledge the procedure followed by the juvenile court in this case provided some due process for the incarcerated mother. Yet, the competing interests involved simply do not justify the limitations imposed on full participation.
 

 In termination hearings, the flexibility of due process should only work to identify a substitute procedural safeguard for incarcerated parents who are unable to participate by telephone for the entire hearing. It does not justify a rule that only allows a parent to participate in the hearing to the extent of testifying. We therefore reject a rule that limits the telephone participation of an incarcerated parent
 in a hearing to terminate parental rights to giving testimony.
 

 Instead, we adopt the standard that juvenile courts in this state must give incarcerated parents the opportunity to participate from the prison facility in the entire termination hearing by telephone or other similar means of communication that enables the parent to hear the testimony and arguments at the hearing. The interests of the parent, the child, and the state support this opportunity. In particular, it serves the compelling interest of the parent to hear the evidence offered in support of a termination petition and to respond effectively to the evidence. We agree with the observations by other courts that parents normally have unique and exclusive knowledge of evidence concerning the termination. After all, their conduct is at issue. The risk of error is too great if a parent does not have the opportunity to hear this evidence and to formulate a response to it.
 

 The opportunity to participate by telephone means the juvenile court must preside over the proceedings in a manner that will best meet this standard. It will require the type of technology commonly used in courtrooms today, with a dose of cooperation from prison officials. We, of course, recognize that circumstances may arise that will challenge the juvenile court's ability to enable a parent to participate in the entire hearing, such as restrictions imposed by prison officials limiting the ability of the incarcerated parent to be available for the entire hearing.
 
 See
 

 Orville
 
 ,
 
 759 A.2d at 597
 
 (involving out-of-state prison that would not allow incarcerated parent to participate in entire hearing);
 
 In re D.C.S.H.C.
 
 ,
 
 733 N.W.2d at 908
 
 (explaining juvenile court could not compel out-of-state prison to compel incarcerated parent to participate in entire hearing);
 
 In re Baby K.
 
 ,
 
 722 A.2d at 472
 
 (remanding due to incarcerated parent's inability to hear proceedings via telephone connection). The problems can be particularly acute when out-of-state correctional officials decline to make a parent available for the entire hearing. The authority of the juvenile court to direct out-of-court officials to comply with the hearing process is limited.
 
 See
 

 In re D.C.S.H.C.
 
 ,
 
 733 N.W.2d at 908
 
 . This limitation, however, does not abate the continuing role of due process.
 

 In the event prison officials from other states, or other circumstances, do not permit the standard to be met, the juvenile court shall provide an alternative process that allows the parent to review a transcript of the evidence offered at the hearing. In this instance, the court must direct an expedited transcript of those portions of the hearing that were closed to the parent be prepared and given to the parent to review prior to testifying by telephone, along with all exhibits admitted into evidence. This alternative means of participation not only permits the parent to testify by telephone or teleconference after having an opportunity to review the record, but to recall witnesses who testify for the state for additional cross-examination and to present other testimony and documentary evidence at the hearing.
 
 Orville
 
 ,
 
 759 A.2d at 600
 
 .
 

 We recognize this requirement will likely add additional expense and require additional time to complete the termination process, but not more than other existing procedural requirements needed to ensure fairness in hearings where so much is at stake. It is in the best interests of children for the court process to proceed without delay, but it is also in the best interests of children that their parents have a full and fair opportunity to resist the termination of parental rights. The potential for error is enhanced if a parent is not informed of the evidence presented in support of the termination. Furthermore, time needed for
 courts to complete a hearing consistent with the notions of due process is not the type of delay that is contrary to the best interests of children. This same understanding applies to any expenses associated with the process of providing parents with a transcript. Transcripts are commonly prepared and used in our justice system, and using them as an alternative safeguard in a termination hearing is not an administrative burden for the state. A true and accurate record has always been a fundamental component of justice and can be used in many ways to promote confidence in a justice system. Additionally, time expended to prepare a transcript for an incarcerated parent during a termination hearing will reduce the time needed to file the transcript for the appeal. Furthermore, technology now allows transcripts to be prepared much faster than in the past, and some juvenile courts are now equipped with digital recording. Finally, the expense of producing a transcript or other record can be assessed as court costs.
 

 In the end, the standard now established in this opinion for juvenile courts to follow in termination hearings involving incarcerated parents is compatible with what a justice system should do for all litigants who need a reasonable accommodation. More importantly, the role of the juvenile judge will continue to be the important driver of procedural fairness expected of courts.
 

 Judges who preside over parent termination hearings must first seek to arrange for the incarcerated parent to participate in the entire hearing by telephone, teleconference, or other similar means, and only need to resort to the alternative procedure in response to uncooperative out-of-state prison officials after first seeking their cooperation.
 
 [3]
 
 Thus, the role of a juvenile judge to seek cooperation in managing the hearing becomes part of due process. Judges are leaders and must at times exercise leadership to help achieve justice. This leadership means juvenile judges may need to confer with prison officials prior to termination hearings to explain the importance of the court procedures and the need for their cooperation to help assure procedural justice. The authority of a court does not just come from the issuance of an order. It also can be found by creating an understanding of justice for others to see and respond. Justice, in the end, is not just for courts to give people. It is for all, and for all to give.
 

 Upon review of the current procedure, we conclude juvenile court judges must follow a different procedure moving forward. First, what has been acknowledged as the better practice over the years will now be the standard practice. Juvenile judges must give incarcerated parents the opportunity to participate by telephone in the entire hearing. Second, if the attorney representing the incarcerated parent is unable to obtain the cooperation of prison officials to make the incarcerated parent available for the entire hearing, the juvenile court must communicate with the prison officials to explain the importance of participation by the parent and the benefits of avoiding the alternative procedure. Finally, if the efforts of the juvenile court are unsuccessful in giving the parent an opportunity to participate in the entire hearing, the juvenile judge must follow the alternative procedure that gives the incarcerated parent the opportunity to review the record of the evidence presented by
 the state at the hearing before testifying. In the end, the new procedure simply means that the juvenile judge or court staff may need to make a phone call or send a communication, a court reporter may need to prepare a transcript, and the termination hearing may need to be bifurcated.
 

 IV. Conclusion.
 

 We vacate the decision of the court of appeals and reverse the termination order of the juvenile court. We remand the case to the juvenile court for additional expedited proceedings in accordance with this opinion.
 

 DECISION OF THE COURT OF APPEALS VACATED; JUVENILE COURT DECISION REVERSED AND REMANDED.
 

 All justices concur except Christensen, Waterman, and Mansfield, JJ., who concur in part and dissent in part.
 

 One of the most serious consequences for young children raised by opioid and methamphetamine addicted parents is the dramatic impact on brain development.
 
 See
 
 Asher Ornoy et al.,
 
 Developmental Outcome of School-Age Children Born to Mothers with Heroin Dependency: Importance of Environmental
 

 Factors
 
 , 43 Developmental Med. & Child Neurology 668, 672-73 (2001).
 

 The court of appeals identified the issue on appeal as whether the juvenile court violated the mother's procedural due process rights by restricting her participation at the hearing. The State also framed the issue in its brief on appeal as a due process claim, and we granted further review under that framework. After we granted further review and asked the State to file a response, the State argued for the first time that the mother failed to preserve error specifically as a due process claim. We decline to address this contention so late in the judicial process. Furthermore, any sound resolution of the issue in this case necessarily requires us to rely on considerations based on due process.
 

 The burden remains with the attorney for incarcerated parents to coordinate their telephonic participation at the hearing.
 
 See
 
 Iowa Ct. R. 61(10). Nevertheless, our judges are facilitators of justice for all who utilize our court system. In that sense, it is important that they aid in ensuring parents are provided the appropriate due process.