**IN THE COURT OF APPEALS OF IOWA**

No. 19-1667
Filed January 9, 2020

**IN THE INTEREST OF N.N.,**
**Minor Child,**

**N.K., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

    A mother appeals the termination of her parental rights to her minor child.

**AFFIRMED.**

    Lori J. Kolpin of Kolpin Law Firm, P.C., Aurelia, for appellant mother.

    Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

    Lisa K. Mazurek of Miller, Miller, Miller, P.C., Cherokee, attorney and guardian ad litem for minor child.

    Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

N.K., the mother, appeals the termination of her parental rights to N.N. The mother argues she should have had an interpreter and attorney during N.N.'s delinquency proceedings[1] and termination is not in N.N.'s best interests. We disagree and affirm the termination of parental rights.

N.N. was born in Iowa in August 2004. N.N. first became involved with the juvenile court system in October 2015 when she was charged with theft at age eleven. The charge was dismissed with a warning. In January 2016, she was again charged with the theft. The family agreed to therapy, and this charge was also dismissed. However, N.N. became defiant and refused to attend therapy. Her family, including her stepfather, repeatedly contacted her juvenile court officer about her escalating behavior. Beginning in August, she was accused of committing a series of theft and fraud crimes. In January 2017, she was adjudicated delinquent on two counts of credit card fraud and placed on probation. She was removed from the family home and placed in a detention center, then a youth shelter, and eventually residential treatment as her behavior improved. On April 28, the juvenile court ordered N.N. placed on probation and returned to the custody of her mother and stepfather. N.N.'s behaviors regressed in the family home. At one point, the stepfather struck her, resulting in felony charges against him and his removal from the home. On July 10, the juvenile court found N.N. violated her probation, and it ordered her removed from the home and placed in a

---

[1] The mother was apparently born outside the country and immigrated to the United States before N.N.'s birth, but the record does not disclose when the mother immigrated.

detention facility. On September 8, the juvenile court, acting on a stipulation signed by the mother and other interested parties, ordered N.N. placed in foster care.

The juvenile court held a series of permanency hearings to monitor N.N.'s progress. On April 3, 2019, the court issued an order finding the mother had failed to demonstrate N.N. could be returned to her custody and directing the State to file a petition to terminate her parental rights. On May 10, the State filed the termination petition. On September 3, the juvenile court held a termination hearing. On September 16, the court issued an order terminating the mother's parental rights under Iowa Code section 232.116(1)(i) (2019).[2] We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to the juvenile court's factual findings, but we are not bound by them. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the child's best interests. *Id.*

First, the mother argues she should have had counsel and an interpreter during the delinquency proceedings. The mother did not raise the prior absence of counsel or an interpreter during the termination proceeding, and for that reason she has not preserved this issue for our review. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases."). We note the juvenile court ordered appointment of counsel and an interpreter on June 20, 2019, soon after the State filed the termination petition on May 10. Her termination

---

[2] The juvenile court also terminated "the parental rights of any unknown biological father to" N.N. under section 232.116(1)(b). Only the mother appeals.

counsel never asserted the prior lack of counsel or an interpreter hindered the mother's compliance with court directives, and the mother does not claim to us that she lacked counsel or an interpreter during the termination proceeding.[3] Furthermore, only the child at interest has a right to counsel and an interpreter during delinquency proceedings. *See* Iowa Code § 232.11 (controlling the child's right to counsel during delinquency proceedings); *see also id.* § 622A.2 ("Every person who cannot speak or understand the English language *and who is a party to any legal proceeding* or a witness therein, shall be entitled to an interpreter to assist such person throughout the proceeding." (emphasis added)). These rights do not extend to the parents as non-parties to the delinquency proceedings. *See In re A.H.*, 549 N.W.2d 824, 828 (Iowa 1996) ("[T]he focus of the [delinquency] proceedings is on the child, not the parent. By statute, it is the child who is entitled to be represented by counsel.").

Second, the mother asserts termination of her parental rights is not in N.N.'s best interests.[4] *See* Iowa Code § 232.116(2). N.N. has been outside the home in

---

[3] N.N.'s juvenile court officer since the delinquency proceedings testified, "The conversations that I had with the mother—on almost every one of them I had an interpreter there or somebody that understood the language to explain to her exactly what we wanted and she acknowledged that."

[4] The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(i), which allows the court to terminate if it finds all of the following:

> (1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.
> (2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.
> (3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

foster care for more than two years now. The mother agreed N.N. could not be returned to her at the time of the hearing. The record establishes the stepfather continues to reside in the family home despite repeated instructions that he must leave the home before N.N. can return. His presence in the home creates a physical and emotional danger to N.N. The mother also showed no progress in improving her parenting skills. She lacks the ability to supervise and provide structure for the child. N.N. has a clear pattern of falling into delinquency in the mother's custody, and her behavior improved dramatically in the structure of her foster home. As a result, the mother's home environment is not conducive for N.N's success.

At the hearing, N.N. testified she agreed with termination and it would be in her best interests for her foster family to adopt her. We agree with the mother that N.N.'s wishes are not determinative, but we consider N.N.'s testimony as part of the best-interests analysis. Iowa Code § 232.116(2)(b)(2); *In re A.H.*, No. 19-1422, 2019 WL 6358222, at *1 (Iowa Ct. App. Nov. 27, 2019) (noting that while it does not control our analysis, a child's opinion is taken into consideration). The mother asserts N.N.'s best interests require her to maintain contact with her family, especially given her unique cultural background as the daughter of an immigrant. That said, the foster family has supported N.N. in maintaining contact with her biological family if she chooses to do so. We therefore find termination is in N.N.'s best interests, and we affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

The mother does not challenge the statutory grounds for termination.