# IN THE COURT OF APPEALS OF IOWA

No. 21-1225
Filed November 3, 2021

**IN THE INTEREST OF A.M.,**
**Minor Child,**

**C.M., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Shannon Leighty, Nevada, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Andrew Meyer, Ames, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

When he was just two weeks old, A.M. suffered severe head and lung injuries at the hands of his father, Christopher. A juvenile court terminated Christopher's parental rights under Iowa Code section 232.116(1) (2021), paragraphs (d), (i), (j), and (m). Christopher challenges the statutory grounds for termination. He also alleges termination was not in A.M.'s best interests because of their close relationship. Iowa Code §§ 232.116(2), (3). Finding clear and convincing evidence supports this termination under paragraph (j), we reject Christopher's first challenge. And given Christopher's felony conviction for child endangerment, we decline to preserve the parent-child relationship under either section 232.116(2) or (3).

A.M. was born in October 2020. Sixteen days after his birth, his father's actions sent him back to the hospital. Christopher admitted to a child protection worker that when A.M. was inconsolable, he tried to stop the crying by pressing the infant's face against his shoulder for twenty seconds.[1] As the infant gasped for breath, Christopher recalled that he "tossed" A.M. into a child seat.

At the emergency room, doctors diagnosed A.M. with pneumomediastinum—"which meant air was escaping [his] lungs due to a trauma." A.M. also had a tear in his esophagus, as well as bruising on his ear, jaw, and skull. Because of the severity of his injuries, A.M. was intubated, placed on a ventilator, and given a feeding tube. He spent two months in the hospital. After discharge, A.M. required specialized care. He needed a feeding tube, physical

---

[1] Christopher told the worker he knew the exact length of time because the suffocation "was to a Van Halen song."

therapy, and speech therapy. And beyond these therapeutic services, experts predicted A.M. may struggle in his educational development.

Accepting responsibility for the abuse of his son, Christopher pleaded guilty to child endangerment. The district court sentenced him to an indeterminate five-year prison term. The court also imposed a five-year no-contact order.

In juvenile court, the State petitioned for termination of Christopher's parental rights.[2] Christopher testified he felt remorse for his actions but "just didn't know how to take care of a newborn baby." The juvenile court granted the termination. Christopher now appeals.

We review terminations de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Although we give weight to the juvenile court's fact findings, they do not bind us. *Id.* The child's best interests is our principal concern. *Id.*

Our review follows a three-step process. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We begin by asking if the State proved a basis for termination under section 232.116(1). *Id.* If so, we consider whether it is in the child's best interests under section 232.116(2) to terminate parental rights. *Id.* at 706–07. Finally, we determine whether any factors in section 232.116(3) weigh against termination. *Id.* at 707.

When, as here, the court relies on several grounds for termination, we affirm if the record contains clear and convincing evidence to support the elements of any paragraph of section 232.116(1). *Id.* Our focus today is on paragraph (j). This section allows for termination if the juvenile court finds:

---

[2] The State did not seek the termination of the mother's parental rights.

> (1) The child had been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>
> (2) The parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household, or the parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years.

Iowa Code § 232.116(1)(j).

Christopher argues the State failed to prove he would be imprisoned for more than five years.[3] He notes that his prison sentence was not to exceed five years. And, given reductions for time-served, he believes he likely will not be imprisoned for five years.[4] But even if Christopher's prediction is correct, it is beside the point.

Christopher misreads the statute. Paragraph (j) allows the court to terminate the rights of an incarcerated parent in either of two distinct situations. Under the opening clause, the State may show imprisonment of any length so long as the underlying crime was against the child, their sibling, or another child living in the household. Alternatively, the State may show the parent is imprisoned for any crime and will serve at least five years. Because of the disjunctive "or," the State doesn't need to prove both circumstances. *See id.* § 232.116(1)(j)(2); *see also In re A.H.B.*, 791 N.W.2d 687, 689 (Iowa 2010) (analyzing similar language in section 600A.8(9)). Because Christopher was imprisoned after pleading guilty to endangering A.M., the State did not have to prove he would serve at least five years. Termination was proper under paragraph (j).

---

[3] Christopher concedes that A.M. has been adjudicated as a child in need of assistance and that custody has been transferred.
[4] Christopher believes he will be released in February 2023.

Christopher next argues that termination was not in A.M.'s best interests. In assessing best interests we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). And Christopher's imprisonment for a felony informs these considerations. *See id.* § 232.116(2)(a).

Given Christopher's callous treatment of his helpless newborn, we believe termination in is A.M.'s best interests. Christopher's actions left his son with long-term disabilities, the extent of which only time will tell. Christopher's own testimony doubted his ability to be a safe caregiver: "Even if I do get [A.M.] back, I'm never going to be alone with him." And even assuming Christopher posed no ongoing threat to A.M.'s safety, his imprisonment and the no-contact order prevent Christopher from contributing to the child's welfare.

Finally, Christopher argues termination would harm A.M. because of their close parent-child relationship. *See id.* § 232.116(3)(c). But Christopher conceded in his testimony that their connection was minimal: "I do believe that we have some sort of a bond, even though it's not like a strong bond, we do still have a bond." Indeed, Christopher had A.M. in his care for sixteen days and has not interacted with him since October 2020. A.M. would not be disadvantaged by severing this tenuous relationship.

**AFFIRMED.**