# IN THE COURT OF APPEALS OF IOWA

No. 22-0727
Filed June 29, 2022

**IN THE INTEREST OF H.M.,**
**Minor Child,**

**B.F., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, District
Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Tyler J. Alger of Sandy Law Firm, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney
General, for appellee State.

Debra S. De Jong of De Jong Law Firm, P.C., Orange City, attorney and
guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

A mother, Bella,[1] appeals the termination of parental rights to her nine-month-old daughter, H.M. She contends the court terminated her rights only because of her mental-health conditions and that termination was not in the child's best interests. Finding no merit in her contentions, we affirm.[2]

## I. Facts and Prior Proceedings

Bella gave birth to H.M. in September 2021. Worried about her mental condition, hospital staff called the Iowa Department of Human Services (DHS). And just three days after her birth, the State petitioned for emergency removal. A few days later, H.M. was adjudicated a child in need of assistance and placed in relative care. As of February 2022, H.M. was in a pre-adoptive foster home. The DHS caseworker testified that H.M.'s current placement is working well.

But the same can't be said for Bella. She insists that the child's best interests demand a return to her care. Before addressing that claim, we review Bella's mental-health history, which has been the focus of these proceedings. She has been diagnosed with post-traumatic stress disorder (PTSD), paranoia, schizoaffective disorder (bipolar type), and generalized anxiety disorder. But she has, by and large, been consistent with accessing mental-health treatment.[3] Yet

---

[1] The record reflects that the mother sometimes uses a different first name. But the termination petition addressed her as Bella. So we will follow suit.

[2] Termination reviews are de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). We give weight to the juvenile court's fact findings, but they do not bind us. *Id.* The juvenile court also terminated the rights of H.M.'s father, Corbin, who was largely absent from these proceedings. He does not appeal.

[3] Bella has engaged in cognitive behavioral therapy, dialectical behavioral therapy, and acceptance and commitment therapy.

her caseworker worried about her prospects, noting: "[H]er compliance has been good, but I can't say that we've seen much progress."

And the record supports the worker's concerns. Bella admitted abusing her prescription medications, tripling the recommended dosage. She reported using methamphetamine and, at times, struggled with excess alcohol consumption. For example, in December 2021, Bella was arrested for domestic abuse assault against the child's father. Police noted her intoxication. And, after noticing erratic behavior, Bella's neighbors have called police for wellness checks.

Noting Bella's poor prognosis, in March 2022 the State petitioned for termination. The next month, the juvenile court granted that request, finding H.M. could not safely be returned to Bella's care. Bella appeals.

## II. Analysis

Our review follows a three-step process. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First we look for proof of a termination ground. Iowa Code § 232.116(1) (2022). Then we consider the child's best interests. *Id.* § 232.116(2). And finally, we examine factors weighing against termination. *Id.* § 232.116(3).

### A. Termination Grounds

The juvenile court terminated Bella's rights under section 232.116(1), paragraph (h). Under that provision, termination is possible when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h).  Bella does not specifically challenge any element of this ground.  Instead, she contends the juvenile court terminated her parental rights based "solely" on her mental-health conditions.  And, because she contends that "mental health issues, by themselves, are not sufficient grounds for termination," she seeks reversal.  *See In re J.H.*, 952 N.W.2d 157, 173 (Iowa 2020).[4]  We interpret this as a challenge to the cannot-be-returned element.

Rebutting, the State argues Bella did not preserve error on this claim.  It contends that "the mother did not argue that termination was occurring based solely upon her status as an individual with mental health diagnoses and, in fact, did not even argue the child could be immediately returned."  After reviewing the transcript, we agree with the State's contention.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting "issues must ordinarily be both raised and decided" before they are reviewed on appeal).

But even if error had been preserved, clear and convincing evidence supports this ground for termination.  Granted, Bella's mental-health conditions, in and of themselves, are not enough to terminate her parental rights.  *K.F.*, 437 N.W.2d at 560.  But they are proper factors to consider when they contribute to her

---

[4] *J.H.* is not precisely on point.  It addresses a parent's "mental limitations" that prevented the parent from learning parenting skills.  *See also In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (reiterating that a parent's intellectual disability alone is an insufficient basis to terminate).  But our supreme court has also held that a diagnosis of mental illness, such as schizophrenia, cannot—without more—support a termination decision.  *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989).

inability to parent, and "may be determinative on the issue of whether termination is required in the child's best interests." *Id.*

Like the juvenile court, we find that communications between Bella and the social workers reveal "substantial concerns" about Bella's mental status and her "inability to focus on relevant matters." True, Bella has engaged in treatment and made some strides on her mental health. But, as reflected in the record, her "ongoing mental health issues put her own safety at risk and would certainly put at risk the safety of an infant who was completely dependent upon her for care."

Indeed, during these proceedings, police have responded to many calls from Bella's neighbors concerned for her well-being.[5] In January 2022, police were "called due to concerns of yelling and screaming." Upon arrival, police suspected Bella was being assaulted. But after forcing entry, officers found no other people in the apartment. About two months later, police again received a 911 call because Bella was "trying to rip a screen off another resident's apartment."

Bella has been offered a litany of services. She has been diligent in seeking help, even requesting new treatment options. That said, her condition is severe. And despite receiving some form of treatment since she was ten years old, as termination neared, Bella's therapist recommended a program tailored to "severely mentally ill clients."[6]

---

[5] Police also responded to calls Bella made herself. According to her testimony, Bella viewed some of these calls as "drills." She placed them to see how long it would take police to arrive. As for the rest, Bella used police to document that her home was a safe place for H.M.—in essence, a makeshift home-study.

[6] Unfortunately, Bella never received this treatment because her insurance would not cover it.

Beyond her mental illnesses, Bella has abused drugs, prescription and "street" alike. She reported methamphetamine use in October 2021. And in February 2022, she admitted to her parole officer that she was abusing the stimulant Vyvanse, taking three times the prescribed dosage. Because of these concerns, her visitations with H.M. have remained fully supervised.

In sum, the State offered clear and convincing evidence that H.M. cannot be safely returned to Bella's care. *See* Iowa Code § 232.116(1)(h)(4). We appreciate that Bella has made a concerted effort to be reunited with her child. But "[p]arenting . . . must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). And like the caseworker, we doubt that "hour-by-hour" Bella could safely care for H.M.

## B. Best Interests

We turn now to best interests. *See* Iowa Code § 232.116(2); *D.W.*, 791 N.W.2d at 706. We give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Beyond these factors, we consider the parent's mental condition when it impacts the quality of care. *Id.* § 232.116(2)(a).

Having weighed these considerations, we find termination is in H.M.'s best interests. As discussed, the record leaves doubt as to Bella's ability to care for herself, let alone a young child. What's more, H.M. is bonded to her foster parent, who is poised to adopt her. *See id.* § 232.116(2)(b). Given those circumstances, termination best serves H.M.'s long-term needs.

### C. Termination Exception

Finally, Bella highlights the love she has for her daughter and the bond that they share.[7]  We do not doubt Bella's devotion to H.M.  But to invoke the close-bond exception, Bella has the burden of showing, by clear and convincing evidence, that termination would be "detrimental" to H.M.  *See, e.g.*, *K.F.*, 437 N.W.2d at 564; *see also* Iowa Code § 232.116(3)(c).  That proof is impossible here.  H.M. is not even a year old.  She was removed from Bella's care within days of her birth.  And H.M.'s sole contact with Bella has been in supervised visitations.  That existing bond does not outweigh the risk of placing H.M., unsupervised, in Bella's care.  On these facts, we cannot find Bella carried her burden.

**AFFIRMED.**

---

[7] In a common misstep, Bella presents this claim as a best-interests argument rather than citing Iowa Code section 232.116(3)(c).