**IN THE COURT OF APPEALS OF IOWA**

No. 22-1946
Filed February 8, 2023

**IN THE INTEREST OF N.W.,**
**Minor Child,**

**B.Y., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Teresa M. Pope of Pope Law, PLLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Kayla A.J. Stratton of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

This appeal involves recent changes to the duties of guardians ad litem (GAL) in Iowa Code section 232.2(22) (Supp. 2022). The mother, Brittany, asks us to reverse the order terminating her parental rights because the juvenile court refused to continue the hearing despite the GAL's failure to file a written report. Brittany also contests each of the three steps for termination. *See* Iowa Code §§ 232.116(1), (2), (3). Finding her claims do not foreclose termination, we affirm.[1]

## I. Facts and Prior Proceedings

N.W. is now four years old. She was removed from her parents, Brittany and Derek, in September 2021 because of their struggles with domestic violence, substance abuse, and mental health. For Brittany, substance abuse has been the greatest impediment to her being a safe parent. Her abuse of painkillers dates back to her teens. When she was nineteen, Brittany met Derek. He introduced her to heroin. After that introduction, Brittany used drugs daily for the next three years—through N.W.'s birth in 2019. Brittany overdosed on heroin more than once, requiring hospitalization. And she also had a history of methamphetamine abuse. N.W. tested positive for methamphetamine on the date of her removal.

Brittany has tried to address her addiction. But she's done so without lasting success. Neither residential nor medically assisted treatment led to the desired results. For instance, she was discharged from two different treatment centers in the spring of 2022 for stealing and breaking rules. She reentered another residential treatment center in October 2022, just before the termination trial. And

---

[1] The court also terminated the rights of N.W.'s father, Derek. He does not appeal.

she asked for the court to allow N.W. to join her at that placement. The court declined to do so, instead granting the State's petition to terminate her parental rights. Brittany appeals that order.

## II. Scope and Standards of Review

Termination reviews are de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.* The State must present clear and convincing evidence to support the grounds for termination. *Id.* That level of proof means we harbor no "serious or substantial doubts" about the correctness of the legal conclusions drawn from the evidence. *Id.* (citations omitted).

In this appeal, two other standards come into play. First, we review a denied motion to continue for an abuse of discretion. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Second, we review statutory interpretation questions for the correction of legal error. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

As always, the child's best interests form the foundation of our review. *W.M.*, 957 N.W.2d at 312.

## III. Analysis

Termination appeals generally call for a three-step analysis. *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). First, we measure whether the State proved statutory grounds for termination by clear and convincing evidence. Iowa Code § 232.116(1). Second, we determine whether termination is in the child's best interest. *Id.* § 232.116(2). Third, we assess whether any permissive exceptions

to termination apply. *Id.* § 232.116(3). But before we do that three-step analysis here, we consider Brittany's challenge to the GAL requirements.

### A. Waiver of a Written GAL Report

Under revisions effective July 1, 2022, the juvenile court must make a good-cause finding before circumscribing the statutory duties of a GAL for a child in a dependency case. Iowa Code § 232.2(22)(b) (codifying 2022 Iowa Acts ch. 1098, § 33). That legislation also expanded GAL duties. Among those new duties, a GAL must submit "a written report to the juvenile court and to each of the parties detailing compliance" with section 232.2(22). *Id.* § 232.2(22)(b)(8). Unless otherwise ordered, the GAL must submit a written report for each hearing. *Id.* As for content, those written reports must detail compliance with this new section:

> In determining the best interests of the child, rather than relying solely on a guardian ad litem's life experiences or instinct, a guardian ad litem shall, with the primary goal of achieving permanency for the child by preserving the child's family or reunifying the child with the child's family, do all of the following:
> (1) Determine the child's circumstances through a full, independent, and efficient investigation, including the information gathered from the child's medical, mental health, and education professionals, social workers, other relevant experts, and other sources obtained in accordance with this subsection.
> (2) Assess the child and the totality of the child's circumstances at the time of each placement determination, including any potential trauma to the child that may be caused by any recommended action.
> (3) Examine all options available to the child in light of the permanency plans.
> (4) Incorporate a child's expressed wishes in recommendations and reports.

*Id.* § 232.2(22)(e).

Because the termination hearing occurred after the legislation's effective date, the GAL shouldered that new duty to submit a written report to the court and

parties.  At the start of the October 24 hearing, Brittany requested a continuance because the GAL had not submitted a report and the requirement had not been waived for good cause.  The court denied the request, noting the following good cause:

> Although it's an obligation of the GAL to provide written reports, the court has told Ms. Stratton based on her injury to her wrist that she did not need to provide those written reports to the court. . . . Ms. Stratton is able to orally provide the court information regarding her position as to termination.  And it's certainly not in the best interest of this child to continue these proceedings any further.[2]

At the close of the hearing, the GAL reported her support for termination of parental rights.  She described seeing N.W. in the current foster home, where she was "settling in well."  The GAL didn't believe that N.W. could handle "too many more transitions without really negative consequences."

In her petition on appeal, Brittany's counsel does not argue that the GAL's wrist issue fell short of good cause.  Nor does she argue that an oral report at the end of the hearing failed to provide her adequate notice of the GAL's position on termination.  Rather, she asserts the court "did not make a finding that good cause existed."  Because the record refutes her assertion, we find no abuse of discretion in the denial of her motion to continue.  *See In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020) (finding an abuse only when the denial is grounded on untenable reasons, like an erroneous application of the law).

---

[2] The juvenile court also stated at the hearing that the GAL report was "not a necessary piece to the evidentiary requirements of a termination proceeding." That question has yet to be answered considering the language of the new legislation.  But Brittney does not raise this issue.  So we need not address it today.

**B. Statutory Ground for Termination**

The juvenile court granted the State's petition under Iowa Code section 232.116(1), paragraphs (h), (i) and (*l*). We can affirm on any of those grounds satisfied by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We focus on paragraph (h). The only disputed issue is whether N.W. could have been placed in Brittany's custody at the time of the hearing. *See* Iowa Code § 232.116(1)(h)(4); *W.T.*, 967 N.W.2d at 322. Like the juvenile court, we find that reunion posed a risk of further harm to N.W. Brittany tried to address her addiction through residential treatment, but had yet to achieve sustained sobriety. Beyond that, she had not stabilized her mental health. Her visits with N.W. remained fully supervised. And she had not shown she could maintain employment or housing outside of her resdential treatment program.

In fact, when asked at the termination hearing if she could provide "a safe and nurturing home" for N.W., Brittany was frank: "Yes and no, honestly." To explain, she acknowledged she would "need more time to transition" back to being a full-time mother.

As for Brittany's request for more time, the juvenile court may deny termination and give the parent another six months for reunification only if the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). This record does not lend itself to such an optimistic outlook. To the contrary, the juvenile court chronicled a lack of progress:

> Based on her past history of multiple residential treatment attempts, ongoing substance use in the community, continued contact with Derek, and need to address her mental health, as well as her lack of stability outside a residential setting, the court cannot find that reunification is likely to occur within six months.

Like the juvenile court, we decline to delay permanency.

### C. Best Interests of the Child

Not only is Brittany unable to show the impediments to returning N.W. to her custody will be gone in six months, such a delay is not in the child's best interests. *See* Iowa Code § 232.116(2). In reaching that conclusion, we consider N.W.'s safety; the best placement for furthering her long-term nurturing and growth; and her physical, mental, and emotional condition and needs. *See id.*

The record shows that Brittany would have trouble addressing both N.W.'s short- and long-term needs. For instance, in her testimony, Brittany did not recognize N.W.'s developmental delays, including the child's speech difficulties. And as the GAL reported, waiting for her mother to address her addiction outside of a treatment setting was not in N.W.'s best interests.

### D. Permissive Exception

Finally, Brittany invokes the permissive exception at Iowa Code section 232.116(3)(c), contending termination would harm N.W. because of the closeness of the parent-child relationship. We acknowledge Brittany's testimony that she and N.W. have had quality visits and engaged in bonding activities, such as coloring, playing with toys, and painting their fingernails. But Brittany has not proven that the loss of their bond would outweigh her inability to provide for N.W.'s developing needs. *See D.W.*, 791 N.W.2d at 709. Thus, termination was proper.

**AFFIRMED.**