## IN THE COURT OF APPEALS OF IOWA

No. 22-2010
Filed March 8, 2023

**IN THE INTEREST OF C.B. and H.B.,**
**Minor Children,**

**B.J., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Danielle M. Ellingson of Eggert, Erb, & Ellingson, PLC, Charles City, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights to H.B., born in December 2018, and C.B., born in December 2019.[1] We affirm.

The children were removed from the parents' care due to concerns about parental drug use (methamphetamine) and mental-health issues (mother was acting erratically, exhibiting paranoia, expressing the belief that her mother was not in fact her mother, and reporting people were breaking into her home via secret passages and could not be seen on surveillance cameras).[2] A child-abuse assessment was conducted and founded for denial of critical care, dangerous substances.

The children were adjudicated children in need of assistance (CINA) on August 19, 2021. The court made findings the mother had been using methamphetamine daily, sometimes while supervising the children, and had inadequately addressed mental-health needs that required removal of the children from parental care. The children were placed with maternal grandparents. The mother's visits with the children were to be supervised, and she was ordered to participate in family-centered services, drug testing, and recommended mental-health treatment. The September 16 dispositional order noted out-of-home placement was still appropriate "because unresolved substance abuse, mental

---

[1] The father consented to the termination of his parental rights and does not appeal.

[2] The mother has a third, older child with another man. That child was also removed from the mother's care at the same time and placed in her father's care. The older child is not involved in these proceedings.

health and criminal issues, Father's placement at [a residential correctional facility] and Mother's recent obtaining sobriety."

The mother made some temporary progress, but in a January 27, 2022 review order the court noted "she has stopped participating in substance abuse treatment and she hasn't drug tested since September." The court continued:

> Inexplicably [the parents] have been having semi-supervised visitation, despite the fact they aren't doing any work toward addressing the protective concerns that existed at the beginning of the case. This is absolutely unacceptable. Additionally, Mother unexpectedly did not call in for the hearing, leaving one to wonder what is actually happening with her.

A February 25 permanency hearing resulted in the court granting the parents an additional six months to achieve reunification in spite of "very little progress" being made.

The mother was subsequently subject to a substance-abuse and mental-health commitment. The juvenile court entered a permanency review order on May 5 in which it noted the mother was not participating in mental-health treatment other than medication management and had yet to obtain a psychological evaluation. The mother was expressing ideas that "raised some concerns about her mental health status." The court further noted that while the mother's substance-abuse committal was closed and she had a negative pre-employment drug screen, she then missed seven random, monitored drug tests. The mother was ordered to obtain a psychological evaluation and follow all recommended mental-health treatment.

On August 11, a permanency review hearing was held. In its review order, the court outlined the mother's claimed progress in employment, drug and mental-

health treatment, and visitation and made findings those claims were not credible. The court concluded: "We are well past the statutory time to establish permanency for these young children. The termination petition [filed August 8] will need to be heard and a permanent decision made for the future of these children."

A September 26 notation by the family support specialist is indicative of the concerns about the mother's mental health:

> Worker met with [the mother] during this time. She was able to state that she had got a new phone as her other one was compromised. She stated that she continues to work with crisis intervention and is talking to an individual for harassment and stalking. When asked about this she stated that she has talked to the local law enforcement as there is a drone that follows her every day. This worker asked about this as this is the first time hearing about this, she stated that it has been going on for roughly [five] years. She stated that she had been in contact with the sheriff['s] office and at first, she thought it was them watching her, this worker asked her why she thought that. She replied that she did not know. She ex[p]lai[n]ed this is part of the reason she keeps her self-protection gun on her, this worker asked [w]hat that is and she explained. She even asked this worker if she wanted to shoot it, this worker declined. [The mother] shared that she had got pulled over this last week for speeding, during this time the officer saw the gun and questioned it. She stated that he had asked her to stop touching it as she was scaring him, at one point . . . he took it and put it on the roof of the car until he was done talking to her.

The social worker case manager was also present during this interaction with the mother and included it in her October 4 permanency report. In addition, the report noted that while waiting for the mother to arrive at the scheduled meeting, the case manager spoke with maternal grandparents who provided information contrary to the mother's reports of her employment and current housing situation. The report also noted the mother stated she was attending therapy every week but she would not provide any further information.

At the beginning of the November 21, 2022 termination proceeding, the mother asked for a different attorney. After inquiring into the reasons for the request, the court denied the substitution of counsel, which would require an additional continuance.[3] The court ruled any further continuance was not in the children's best interests and informed the mother she could continue with current counsel or represent herself. The mother chose to have counsel represent her. The hearing proceeded with the admission of exhibits and the testimony of the mother and the case manager. The case manager testified the mother had asked that the children be genetically tested because the mother had stated "she believes that there has been too many changes, other than normal aging changes, in the kids than what normally would occur with age so she doesn't believe that they are her children." She confirmed the mother had been under a mental-health committal. She also testified the mother had not responded to requests for drug screens and was not working. The case manager testified she did not believe the children could be safely returned to the mother.

The children's guardian ad litem agreed grounds for termination of parental rights existed.

The court found, "The children cannot safely return to the custody of a parent today. . . . Mother is clearly struggling with delusions, hallucination and

---

[3] The court noted the appointment of new counsel in September 2022 and the previous continuances of the scheduled termination trial. The court ruled,

> I'm not going to continue this. I've continued it three times already. . . . I cannot in good conscience continue this again because next time it's going to happen, you're going to come in and fire that attorney and we're never going to have this hearing. We're already on your second attorney.

thinking errors, and particularly thinking that the children have been 'switched[,]' they would be in grave danger if left alone with her." The court noted the children were young and "have no ability to self-protect or call for help." It also found the children were "placed with relatives who are an adoptive option and have a connection with extended family members of both parents." The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2022). She appeals.

The mother objects to the denial of her motions for substitute counsel and to continue and takes issue with the juvenile court's findings and conclusions. The mother contends the children could have been returned to her. She also asserts her bond with the children should preclude termination.

"[O]ur review of a district court's denial of a motion for continuance is for an abuse of discretion." *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *Id.* (citation omitted).

Here, the juvenile court noted the case had already been continued and the mother's motions were very late—being made more than thirty-minutes *after* the hearing starting time. It found mother's trial counsel had been providing zealous representation and allowed the mother the option to proceed self-represented, with counsel as stand-by, or proceed with counsel. We do not find any abuse of discretion in denying the mother's motions. *See id.* at 233 (noting "[c]ontinuances may be detrimental to the best interests of children" when the statutory time frame had been met).

We review terminations de novo, giving weight to the juvenile court's findings and conclusions. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the child." *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The mother challenges termination under section 232.116(1)(h),[4] claiming the children could be safely returned to her at the time of the termination proceeding because she had not had a positive drug test, had recently reengaged in mental-health treatment, and was going to visits. The record—which we have truncated above—belies any indication the children could be safely returned to the mother's care at the time of the hearing. The mother's unresolved mental-health issues pose risks to the children's physical and emotional safety. Thus, we find clear and convincing evidence to terminate the mother's parental rights under section 232.116(1)(h).

---

[4] The juvenile court may terminate parental rights under this paragraph if it finds all of the following:

    (1) The child is three years of age or younger.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

"[A]t the present time" means at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707.

The mother was granted far more than the statutorily alotted time to address her mental-health and substance-abuse issues. *See C.B.*, 611 N.W.2d at 495 ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."). The children are doing well and are integrated with the family in a pre-adoptive setting where their physical and emotional needs are met. *See* Iowa Code § 232.116(2)(b). Even acknowledging a bond exists between mother and children, the mother has failed to present "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (holding "the parent resisting termination bears the burden to establish an exception to termination"). We affirm the termination of the mother's parental rights.

**AFFIRMED.**