**IN THE COURT OF APPEALS OF IOWA**

No. 25-0740
Filed August 20, 2025

**IN THE INTEREST OF L.G.,**
**Minor Child,**

**T.G., Father,**
      Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.

A father appeals the termination of parental rights to his child. **AFFIRMED.**

Richard Hollis, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Jane White of Gribble, Boles, Stewart & Witosky Law, Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his child, L.G., born in 2008.[1]  Upon our de novo review, we affirm.

## I.    *Background Facts and Proceedings.*

The Iowa Department of Health and Human Services (the department) became involved with this family after receiving reports that the father was engaging in domestic violence in the child's presence and abusing alcohol and illegal substances.  L.G. was removed, placed with her maternal aunt and uncle, and adjudicated as a child in need of assistance.[2]

While the department offered a litany of services, including mental-health and substance-use treatments, visitation, and family services, the father was consistently unable or unwilling to comply with recommendations.  Instead, he maintained that the department's involvement was unnecessary because there was no domestic violence and his drinking had been resolved despite the exhaustive record indicating otherwise.  The father spent most of the time the juvenile case was pending incarcerated on domestic violence-related charges, and as of the time of the termination hearing, was sentenced to serve two years in prison.  And while he completed a substance-use evaluation and parenting classes while incarcerated, the juvenile court found "they were of limited remedial effect."

Meanwhile, L.G. made more progress than her father.  The juvenile court described L.G., who was sixteen-years-old at the time of the termination, as

---

[1] Unfortunately, the mother passed away in 2021, years before these proceedings were initiated.  Accordingly, only the father's parental rights were terminated.
[2] While L.G. was removed from her father's custody and care, we do note that she had been in the care of various relatives off and on long before these proceedings.

intelligent and mature for her age. Since being placed with her aunt and uncle, she was doing well in school, maintained a part-time job, engaged in mental-health services, and obtained her driver's license. Her only concern was "process[ing] the significant trauma" caused by her father.

Throughout the proceedings, the father's relationship with L.G. was strained based on what the juvenile court described as "an almost complete inability to have appropriate conversations with [her]." When the father uses alcohol, he "become[s] more violent and belligerent." L.G. witnessed the father engage in acts of violence against multiple girlfriends and experienced his wrath personally as he "would scream at her" and "say cruel things." On one occasion, the father "began yelling at [L.G.] on the phone and [told her] she cannot get her belongings," "called her a 'spoiled fucking brat,'" and "accused [L.G.] of wanting to stay with [her aunt and uncle] because she wants the social security benefits and that she needs to get it out of her head she is staying there because she is coming home." When the social work case manager spoke with L.G. about her case, L.G. "would worry to the point of her hands shaking and her voice wavering in conversation" because "she does not feel safe with [her father] over the past year." L.G. "unequivocally expressed her desire that [her father's] parental rights should be terminated."

The juvenile court agreed and after a termination hearing occurred in February 2025, terminated the father's parental rights to L.G. The father appeals.

## II.    *Review.*

"We review termination of parental rights proceedings de novo. While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility. Our fundamental concern on review is

the child's best interests." *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021) (cleaned up).

### III. Discussion.

To analyze termination-of-parental rights, we follow a three-step process, in which we determine whether a statutory ground for termination has been met, termination is in the best interests of the child, and any permissive exceptions apply to prevent termination. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). We also consider any additional arguments raised by the father.

### A. Combination Permanency-Termination Hearing.

The father first contends that combining permanency and termination into one hearing violated his equal-protection and due-process rights. But we have repeatedly held that a combined permanency-termination hearing is consistent with both the statutory scheme of termination proceedings and protection of the parent's constitutional rights. *See In re J.S.*, No. 23-0701, 2023 WL 4531766, at *7 (Iowa Ct. App. July 13, 2023), *partially overruled on other grounds by* In re L.A., 20 N.W.3d 529 (Iowa Ct. App. 2025); *In re P.S.*, No. 21-0779, 2022 WL 120411, at *2 (Iowa Ct. App. Jan. 12, 2022); *In re J.L.*, No. 20-1546, 2021 WL 1661235, at *2 (Iowa Ct. App. Apr. 28, 2021); *In re K.P.*, No. 14-0122, 2015 WL 2885351, at *2–3 (Iowa Ct. App. June 25, 2014); *In re H.V.*, No. 15-1481, 2015 WL 6507559, at *1 (Iowa Ct. App. Oct. 28, 2015). The father was "afforded notice of the hearing and a meaningful opportunity to be heard," which is sufficient for due process. *See K.P.*, 2015 WL 2885351, at *2; *accord In re M.D.*, 921 N.W.2d 229, 233 (Iowa 2018) (requiring incarcerated parents "to receive advance notice of a hearing, be represented by counsel at a hearing, and be given an opportunity to present

testimony orally by telephone"). Because the father was neither treated differently as an incarcerated person nor deprived of due process, we find his arguments without merit.

### B. Statutory Grounds for Termination.

The juvenile court terminated the parental rights to the father under Iowa Code section 232.116(1)(e) and (f). But because we may affirm on any one ground supported in the record, *see In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012), we limit our analysis to section 232.116(1)(f). To terminate parental rights under Iowa Code section 232.116(1)(f), the juvenile court must find:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father only challenges the last element: whether the child could "be returned to [his] custody" at the time of the termination hearing.[3] *Id.* § 232.116(1)(f)(4); *accord A.B.*, 956 N.W.2d at 168 (interpreting "at the present time" in section 232.116(1) to mean at the time of the termination hearing). His arguments on this issue are three-fold: he challenges the juvenile court's credibility determinations about his progress, the finding that the department met its

---

[3] But we do note that the father testified at the termination hearing that "he is not interested in having [L.G.] reside with him" and agreed that she would stay with her aunt and uncle regardless of the outcome of the proceedings.

reasonable-efforts requirement, and the denial of a six-month extension. We address each argument in turn.

First, the father disputes each of the court's findings regarding his incarceration, domestic violence, substance use, and mental health. We note at the outset that the father was facing a prison sentence at the time of the termination trial and had spent most of the juvenile case incarcerated. But even without the impending prison sentence, the juvenile court found that the father "display[ed] an almost categorical inability to acknowledge and recognize his deficiencies." Even on appeal, he continues to minimize each of the issues which led to removal, maintaining that his substance-use and mental-health concerns were "resolved" and refuting criminal charges despite pleading guilty. But the record shows that the father engaged in domestic violence in L.G.'s presence, confessed to other acts by pleading guilty, was unable to properly communicate with L.G., and routinely refused department services. As the juvenile court noted, the father "made no genuine effort" to engage in the department's permanency plan and services. And while the father completed a substance-use evaluation and became sober while incarcerated, he had never demonstrated that he could maintain sobriety outside of an institutionalized setting. We therefore disagree with the father's contention that these concerns were somehow disproven or resolved when the record establishes the father "display[ed] a profound lack of insight into the pervasive[ness] of domestic violence" and failed to make any meaningful progress towards reunification.

Second, the father contests the department's fulfillment of reasonable efforts towards reunification. *See In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000)

(requiring the department to "show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent"); Iowa Code § 232.102(6) (requiring the department to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interest of the child").  But we also require parents "to object to services early in the process so appropriate changes can be made."  *C.B.*, 611 N.W.2d at 493–94.  The father does not cite a single instance in which he notified the court of a deficiency and requested alternative services.  *See In re A.W.*, No. 23-1125, 2023 WL 6290680, at *3 (Iowa Ct. App. Sept. 27, 2023) (explaining error-preservation requirements for reasonable-efforts challenges).  Accordingly, we decline to consider this argument further.

Finally, as an alternative to termination, the father requests a six-month extension based on his purported progress while incarcerated.  The juvenile court may grant additional time to work towards reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  But the court must justify the extension by "enumerate[ing] the specific factors, conditions, or expected behavioral changes."  *Id.*  Upon our review of the record, we do not find that an additional six months will change the result.  At the time of the termination hearing, the father was sentenced to serve two years in prison.  Although the father was out pending the appeal of that sentence, he was in jail for most of the juvenile case.  Though he claims that he "will continue to improve his parenting skills" and address his mental-health and substance-use concerns, he was already given over a year to reunify without any progress.  The father's belated desire to make progress

comes too late. *See C.B.*, 611 N.W.2d at 495 ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). Based on the father's history of noncompliance with services and lack of progress, we do not find that an additional six-month extension is warranted. *Id.* (considering a parent's "past performance" to indicate "the quality of the future care that parent is capable of providing" (citation omitted)).

### C. Best Interests of the Child.

While the father agrees that L.G. should remain with her current placement, he challenges the court's finding that termination was in L.G.'s best interests. To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.B.*, 815 N.W.2d at 777 (citation omitted). Despite the father's argument that L.G.'s "need for permanency is much less" because of her older age, we disagree. L.G. has been "continually patient with her father" as he failed to make progress towards reunification. In that time, the father "refused to acknowledge or address the concerns giving rise to removal," which supports the finding that termination is in the child's best interests. *In re A.G.*, No. 18-1161, 2018 WL 6131920, at *3 (Iowa Ct. App. Nov. 21, 2018).

We also give due weight to L.G.'s request for termination, as she expressed "that she is ready for this to be over and wants to remain with her Aunt and Uncle permanently." *See* Iowa Code § 232.116(2)(b)(2) (considering "[t]he reasonable preference of the child" when determining best interests). The juvenile court described L.G. as "intelligent, able to articulate her feelings, and navigate her relationship with her father." When explaining L.G.'s relationship with her father, the court further noted that the relationship "was demonstrative of [L.G.] parenting [the father] rather than the converse." While the father argues that there were no "obvious signs of abuse" to L.G.'s body, the record is replete with evidence of the psychological harm and verbal abuse that the father inflicted upon L.G., who recognizes the father's behavior as abusive and has concluded termination is best for her. And since the removal, L.G. has finally been able to be a teenager. She "has blended seamlessly" and "flourished" within the placement's home. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (finding the child's favorable integration into the placement supports termination). Accordingly, we agree with the juvenile court (and L.G. herself) that termination is in her best interests.

*D. Permissive Exceptions to Termination.*

Finally, the father asks us to decline to terminate based on either placement with a relative, the parent-child bond, or his institutionalization. *See* Iowa Code § 232.116(3)(a) (providing the court with a discretionary exception to termination if "[a] relative has legal custody of the child), (c) ("[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"), (e) ("[t]he absence of the parent is

due to the parent's admission . . . to any institution).  But we do not find any exception is warranted.

Most notably, we find neither subsection (a) nor (e) applies.  First, a relative does not have legal custody of L.G.; the department does.  *See In re A.B.*, 956 N.W.2d at 170–71 (differentiating between placement with a relative and a relative having legal custody).  Second, "the word 'institution' in section 232.116(3)(e) was not intended to include penal institutions or correctional facilities."  *In re M.C.*, No. 16-1934, 2017 WL 706393, at *3 (Iowa Ct. App. Feb. 22, 2017).

As for the purported parent-child bond, the father cannot establish "that, on balance, that bond makes termination more detrimental than not."  *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021).  In fact, we find that preserving the parent-child relationship may do more harm than good.  The juvenile court expressly found that their bond was never "the sort of common, affectionate love between a parent and child" but instead reflected "a sort of possessive and controlling 'love' more akin to elements of power and control inherent in domestic violence."  The court further referenced in its ruling several times the harm to L.G. from her father's behavior.  We agree and therefore decline to apply any permissive exception based on such a bond.

## IV.    *Disposition.*

Because the statutory and best-interests determinations support termination and none of the father's arguments against termination have merit, we affirm the termination of his parental rights.

**AFFIRMED.**