# IN THE COURT OF APPEALS OF IOWA

No. 25-2056
Filed April 15, 2026

**In the Interest of K.I., Minor Child,**

**K.J., Mother,**
Appellant.

Appeal from the Iowa District Court for Guthrie County,
The Honorable Virginia Cobb, Judge.

**AFFIRMED**

Sandra C. Johnson of Cunningham & Kelso, P.L.L.C., Urbandale, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Donna M. Schauer of Schauer Law Office, Adel, attorney and guardian ad litem for minor child.

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, K.I., born in 2021. The mother urges that the juvenile court erred by terminating her rights under Iowa Code section 232.116(1)(d), (f), and (i) (2025). She also asserts that termination was not in the best interests of the child and a six-month extension should have been granted to allow the mother more time to address concerns. The mother also advocates that permissive exceptions apply to prevent the termination of her rights.

After reviewing the record, we affirm the termination of the mother's parental rights as, at the time of the termination hearing, there remained concerns over the mother's stability. We also find that another six months would not resolve the issues; no permissive exceptions apply; and the child deserves permanency. Thus, we affirm the juvenile court ruling terminating the mother's parental rights to K.I.

## I. Background Facts and Proceedings.

The family came to the attention of the Iowa Department of Health and Human Services (HHS) at the end of November 2022, after reports that the mother's paramour, brandishing a firearm, threatened to kill the mother while the child was present. There were also allegations that the paramour had physically assaulted the mother. In addition, HHS became aware of concerns that the mother, along with her paramour, were using methamphetamine and marijuana and those substances were accessible to the child.

Although the mother and child were allowed to live together under a safety plan, the mother left with the child to return to the paramour's home, refusing to disclose her location to HHS. After the mother told the HHS

social worker she would not follow the safety plan, the child was removed from the mother's custody in January 2023 and placed in the care and custody of HHS, which found a foster care placement.

The child was adjudicated a child in need of assistance (CINA) in May 2023. That same month, the mother was arrested for operating a vehicle while under the influence (OWI). In June, at a dispositional hearing, the child was returned to the father's custody under the supervision of HHS.

During this time following the dispositional hearing, the mother did not follow through with requested drug screens, would not initially reveal to HHS where she was getting treatment, and admitted to previous methamphetamine use and current marijuana use. As time passed, the mother participated in therapy and attended outpatient substance-use treatment. The outpatient counselor recommended inpatient substance-use treatment due to the OWI charge and the relapse with alcohol, but that was downgraded to extensive outpatient services in July based on the mother's sobriety. After a contested dispositional hearing in August, the mother started semi-supervised visits with the child, but because of concerns about her relapse on marijuana and alcohol, fully supervised visits were reinstated after a few weeks.

At an October dispositional review hearing, the HHS social worker noted that the mother was having "a difficult time maintaining stability and sobriety." After being charged with public intoxication in February 2024, which she did not immediately disclose to HHS, the mother went into inpatient treatment. In April, the mother was discharged from the treatment program as "max benefited" due to medical issues. HHS considered the inpatient treatment "unsuccessful." Then, in July, it was noted the mother had received two probation violations for testing positive for marijuana and

leaving the state without permission from her probation officer. While the mother did begin extensive outpatient substance-use treatment, compliance started strong but then wavered. Because of the lack of attendance, she was discharged at the end of July. She did maintain regular mental-health therapy sessions, however. Meanwhile, the child remained in the father's custody and was doing well. In August, the juvenile court set a permanency hearing. The HHS worker noted that sobriety remained a concern for the mother but recommended a bridge order be put in place.

On a downhill trajectory, the mother disengaged from regular visits with the child and incurred more probation violations,[1] her living arrangements were unknown, and her communication about her living arrangements was believed to be untrue. At the September permanency hearing, the State still recommended a bridge order, but the guardian ad litem (GAL) recommended termination of the mother's parental rights. After the hearing, the juvenile court changed the permanency goal to address those two options. In January 2025, the mother's outpatient substance-use counselor was quoted in the HHS report as opining that the mother was "in denial" and "unwilling to take accountability of her own actions." She noted two relapses related to substances in the last few months and the mother's disengagement from requested testing. By March, HHS was still

---

[1] An August 21, 2024 probation-violation report stated:

> The [mother] was given one year of probation, her discharge date is 9/28/24. During that time the [mother] failed to complete both inpatient and outpatient substance abuse treatment and has continued to use illegal drugs. It is requested that a hearing be held to address the violations in the addendums written on 7/8/24, 7/15/24, and 8/21/24. It is recommended that the [mother's] probation be revoked and jail time served.

4

recommending a bridge order, but only if the parents could agree to the terms. But by May, the juvenile court noted the mother's lack of significant progress and adopted the termination recommendation of HHS and the GAL.

To the mother's credit, she made some progress in outpatient substance-use treatment in June, but she continued using marijuana and obtained a medical marijuana card the day after testing positive in July. Concerns remained about the mother's unstable housing, employment, and lack of follow-through in substance-use and mental-health treatment. By September, at the termination trial, the mother refused to provide HHS information about her living arrangements.

On November 20, the juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i), finding that the State met its burden by clear and convincing evidence. The mother appeals.

## II. Standard of Review.

We review termination of parental rights proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020) (per curiam). We give weight to the juvenile court's factual findings but are not bound by them. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The best interests of the child are our paramount concern. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

## III. Analysis.

We apply a three-step analysis to review a termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). Those three factors are: (1) "determine whether any ground for termination under section 232.116(1) has been established," (2) if a ground has been

established, we next "determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) if the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (citation omitted).

**A. Whether a Ground for Termination Was Established.** While the juvenile court terminated the mother's parental rights under several grounds, we need only find that there is clear and convincing evidence to establish any one of the grounds identified by the juvenile court. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014) ("[W]e need only find termination appropriate under one of these [grounds] to affirm.").

Thus, we turn our focus to Iowa Code section 232.116(1)(f). Under this section, the juvenile court may terminate the parent's rights if it is shown by clear and convincing evidence that the child: (1) "is four years of age or older"; (2) "has been adjudicated [CINA] pursuant to section 232.96"; (3) "has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days"; and finally (4) "cannot be returned to the custody of the child's parents as provided in section 232.102." *Id.* The mother concedes that the first three elements were shown, but contests the fourth, arguing that she should be "able to reunite with her child at the end of a six-month extension."

From that statement, the mother admitted she could not resume custody of the child "at the present time," which means "at the time of the termination hearing." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The HHS social worker acknowledged that there were times the mother made progress during the course of the case, but that overall the mother had not

made meaningful changes. There was no other argument advanced by the mother that she was ready to accept custody at the time of the termination trial and, in any event, given the mother's lack of progress in addressing the concerns identified by HHS, we find there is clear and convincing evidence the child could not be returned to the mother at that time. Thus, grounds for termination were established by clear and convincing evidence. We next address the best interests of the child.

**B.   Whether Best-Interests Framework Supports Termination**. When making a best-interests determination, we focus on the "child's safety and the need for a permanent home." *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). As additional factors, we consider "the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). On this issue, the mother emphasizes that she deserves another chance and asserts that the closeness of her relationship with the child should prevent termination.

At the termination trial, the HHS social worker described the mother's struggles with anxiety, depression, and substance issues involving methamphetamine, marijuana, and alcohol use. She admitted to using marijuana but now has a medical card. At the trial, she admitted she was still using alcohol. Likewise, concerns remained about the mother's mental health. To help with her treatment, the social worker had recommended a specific mental-health program, but the mother would not engage in the program. On top of that, the mother reported feeling overwhelmed and only being able to focus on her recovery, not the child's needs. Stability of the mother's living situation and employment was also a concern. At the time of the termination trial, HHS was unaware of the mother's living arrangement

as the mother would not tell the worker where she was living. To make matters more difficult, the mother continued to accumulate probation violations related to new criminal charges and arrests, which the HHS social worker described as an impediment to making good and safe choices for the child. The mother's substance-use counselor also detailed problems with the mother's progress.

With the focus on the child's long-term best interests, the evidence showed that the child had been with the father for over two years. The child was stable and doing well in the father's care. And there appeared to be a strong bond between the child and his stepmother and the child and his father. Here, the mother points to HHS's initial position that a bridge order would be the better option for the child. Then, the child could maintain a relationship with the mother but stay with the father. But as time went along, HHS abandoned the bridge order option because the parties could not agree on it and the mother's situation was not improving. The child had spent half of his life in his father's custody and was thriving. The mother still had unresolved issues that impacted her ability to parent. The child "should not be forced to wait for their parent to be able to care for them." *In re D.M.*, No. 21-1681, 2022 WL 951057, at *1 (Iowa Ct. App. Mar. 30, 2022) (citation omitted). We conclude termination was in the child's best interests.

**C. Whether Any Exceptions Apply to Preclude Termination.** The burden of proving whether any permissive exceptions to termination apply rests on the mother. *A.S.*, 906 N.W.2d at 475–76. The exceptions "in section 232.116(3) are permissive, not mandatory." *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011).

The mother asserts that her bond with the child trumps termination of her rights as it would be detrimental to the child. Iowa Code § 232.116(3)(c).

The record does not support the bond the mother describes. Related to the bond between the child and the mother, at trial the social worker indicated that while there originally was a bond, for "the last three to four months it's been observed to be a lack of [a] bond." And while he is at his father's home, the child does not ask for his mother.

During the case, the mother and child had weekly four-hour visits that continued to be fully supervised. The visitation was briefly semi-supervised but changed back to the fully supervised status because of the mother's dishonesty about her arrest and relapse. But the HHS social worker also described the mother's lack of engagement and interaction with the child during visits. There were also suspicions that the mother was under the influence of substances during some of the visits, shown by falling asleep instead of focusing on the child. Phone contact was unrestricted between the mother and child, but the mother did not take advantage of it to stay connected with the child. The mother also had access to additional supervised visitation for holidays or other occasions, but she did not take advantage of those, either. While the mother loves the child, our consideration remains what is in the best interests for the child. *D.W.*, 791 N.W.2d at 709 (noting our focus is not on whether a parent loves the child, but on whether a "child will be disadvantaged by termination" (cleaned up)). Here, the evidence related to the bond did not justify the application of this exception to overcome termination.

As another exception the mother points to the relative placement with the father and asserts that termination can be avoided because "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). But this exception is not automatically applied when the child is in the care of the other parent. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992) ("It is not in

9

the [child's] best interests to interpret the language of the subsections to prevent termination of the noncustodial parent's rights when the [child is] placed in the separate home of the other parent."). And like the discussions about seeking a bridge order rather than termination, this is not an appropriate reason to avoid termination here. The best interests of the child mandate that permanency be achieved. Because of the mother's instability, the termination of her rights is warranted.

**D. Whether Additional Time Will Allow for Reunification.** The mother asks for another six months to remedy the concerns and reunite with her child. Under Iowa Code section 232.104(2)(b), the court may delay permanency for six months if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." To accommodate this request, we must be able to conclude the need for removal will no longer exist at the end of the time extension. *See* Iowa Code § 232.104(2)(b); *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) ("In order to continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension."). Here we cannot. Since HHS became involved, and after reasonable efforts, the mother still has not sustained progress past the initial barriers to reunification. The mother does not identify—nor can we envision—what other efforts over six months would result in that sustained change.

**IV. Conclusion.**

After considering the mother's arguments on appeal, along with our review of the record, we affirm the termination of the mother's rights. We find a ground for termination was proven by clear and convincing evidence and it was in the best interests of the child to proceed with termination.

10

There were no permissive exceptions that applied and another six months of time would not have led to reunification given the mother's history.

**AFFIRMED.**